DELOSH *v.* DELOSH.

1. VENDOR AND PURCHASER—BONA FIDE PURCHASER—NOTICE.
    Possession and occupancy of a house and of real estate is notice
    to all the world of the claims of such tenant or occupant.[1]

2. SAME—STATUTE OF FRAUDS—ORAL CONTRACT.
    Complainant's evidence tending to show that he went
    into possession of a house and parcel of land under an oral
    contract with defendant, his father, to care for the latter
    during his life in consideration of a conveyance to com-
    plainant, and being contradicted by defendant, who also
    testified that he was neglected by the son and son's wife,
    that he remained away from home most of the time, fur-
    nished his son with supplies on numerous occasions, war-
    ranted the trial court in holding that the testimony was not
    sufficiently clear and convincing to justify a decree over-
    turning the record title.

Appeal from Wayne; Donovan, J. Submitted April
9, 1912. (Docket No. 76.) Decided July 11, 1912.

Bill by John Delosh against Vincent Delosh and anoth-
er for specific performance of an oral contract to convey
real property. From a decree for defendants, complainant
appeals. Affirmed.

*George W. Coomer,* for complainant.

*Ari E. Woodruff* and *Frank W. Atkinson,* for
defendants.

STEERE, J. This suit was instituted by complainant to
secure title to a part of lot 1 of Peter Perry's subdivision
of a portion of section 20, in town 3 north, of range 11
west, situated on Perry street in the village of Ford,
Wayne county, Mich. Complainant alleges its value, as
near as he can estimate the same, to be $600. The clear

―――――――――――――

[1] Possession of land as notice of title, see note in 13 L. R. A. (N.
S.) 49.

record title to said property is in defendant Remi Reaume, who purchased the same from defendant Vincent Delosh, father of complainant, in December, 1910, for the sum of $650 in cash, receiving a warranty deed therefor.

Complainant has resided upon the premises since November, 1909, and was in possession at the time defendant Reaume purchased it. Reaume owned property adjacent to this lot and was importuned by Vincent Delosh, who claimed to be the owner, to buy it. Reaume testified that he did not know complainant was in possession, but supposed the father, Vincent, was, to whom he understood it belonged; that, having finally consented to make the purchase and agreed upon a price, he employed an attorney to investigate the title, and ascertained that it stood in the name of Vincent Delosh subject to a mortgage for $200 and some accrued interest; that he paid up the mortgage and gave the balance of the purchase price, amounting to $429, to said Vincent; that he first learned of complainant's claim when he proposed to take possession of the property, the assertion being made that the father had agreed to convey it to the son in return for care and support; this being denied by the father, Reaume instituted proceedings to obtain possession, and complainant filed this bill. He was granted a temporary injunction restraining proceedings at law to evict him pending this suit.

Complainant in his bill asks that the deed from his father to Reaume be set aside, declared null and void, and ordered canceled; that specific performance on the part of his father be decreed, and he be ordered to convey said premises to complainant. Defendants, in their joint answer, deny the allegations of complainant's bill, allege that Vincent Delosh was the owner of the property in fee simple, without limitation, on or about December 8, 1910, when he sold and conveyed the same to defendant Reaume, for a full and adequate consideration, which was paid, said Reaume becoming the owner as purchaser in good faith for full value.

At the hearing of said suit, the testimony was taken in open court and the trial judge, who saw and heard the witnesses, with opportunity to note their appearance on the stand and manner of testifying, found the testimony so contradictory and unsatisfactory that he was unable to determine complainant had established his contention by such preponderance of evidence as should appear to justify overturning a record title. A careful reading of the testimony leads us to the same conclusion. It strongly gives the impression that the witnesses on both sides testify recklessly and in the extreme, exaggerating the facts, and so framing their testimony as to sustain whatever the side they testify for desires to establish.

Defendant Reaume's claim of ignorance that complainant was in possession of the property could avail him nothing, if true. It is undisputed that complainant was residing there all the time, with his family, in possession, occupying it as a home. This was constructive notice to every one of all his rights in the property, whatever they might be. *Hommel* v. *Devinney*, 39 Mich. 522; *De Veaux* v. *Fosbender*, 57 Mich. 579 (24 N. W. 790).

It is undisputed that complainant moved upon the premises on invitation of his father, and that complainant was at that time in reduced circumstances from sickness and death in his family. Complainant claims an oral contract to sell or give him the property, and that he took possession as owner. The father denies that any such contract was broached or made, and claims that, as an act of paternal kindness, he allowed complainant, through sympathy with his misfortunes, to shelter himself and family there, going into possession as a tenant by sufferance. As to the nature of the bargain and possession taken, complainant testifies:

"Father said, 'John, you have had bad luck;' I had lost a girl 14 and a boy between 10 and 11 in five weeks' time; I had buried both of them; 'I will give you that house;' he says. 'Go and fix up that house and stop pay-

ing rent; fix it up, and I will give it to you;' and he says, 'I will make my home with you.' After that I fixed up the house and went into possession and he lived with me."

The father testifies as to this transaction:

"He had a house that he had bought, and he had lost two children, and the house was quarantined, and I went and carried some blankets and pillow cases and some bed spreads and put upon the steps; a man named Le Blanc owned the place where he lived. The way he came to my house was: I says, 'My boy, you are not out of doors. I have a kitchen, and you can live here.' I says, 'You can live here in the kitchen a few days anyhow,' but I said it was sold to Reaume. He came to live with me when he was quarantined. * * * I looked at the house since I came back; there has been nothing done to the house. * * * I did not give that property to my son.

"*By the Court: Q.* Did you will it to him?

"*A.* No, sir.

"*Q.* Did you make a bargain with him?

"*A.* No, sir.

"*Q.* Did you make a bargain if he would take care of you?

"*A.* How could that man take care of me when I was left three days under a blanket poisoned to death? I cannot depend on him."

Complainant's wife and three other witnesses gave testimony as to conversations in which the old man said he had given the place to his son.

We are unable to give this testimony much probative force. It was but random remarks in casual conversation with the others; the wife's testimony was bitter and manifestly exaggerated. She testifies:

"He was in the habit of being out all hours of the night; he never came home during the time he stayed with us unless intoxicated; it was something terrible what I cleaned after that old man. * * * I might as well say he was drunk every day and at night when he was out, and it was very seldom he would not go out."

If this was true, what he said was of little consequence. Complainant lived on the premises 13 months before his

father conveyed the same to Reaume. What was done and what the relations of the parties were during that time is difficult to determine from the hostile, exaggerated, and conflicting testimony of the witnesses. Complainant claims to have made repairs on the house, and cared for and supported his father. The father, though old, is shown to have been able to work and earn wages as a carpenter, at least a part of the time. He claims that he lived away most of the time, working at his trade; that when home, sick, he was neglected; that, instead of the son caring for and helping him, he helped the son, allowing him to occupy the house, and, at times when he returned from work, furnishing vegetables and other provisions. The son and his wife testified the father was an habitual drunkard, filthy, and annoying. The father in return testified bitterly, in unkind and conflicting terms, as to them. Whatever the truth may be, none of the witnesses have made it clear and convincing. From complainant's own testimony we conclude that his expenditures would not exceed what he gives as the fair rental value of the property during his occupation. No strong, appealing equities stand out in his behalf. To go over the testimony in detail would serve no useful purpose.

Complainant has not established the alleged contract, nor its alleged performance on his part, by a clear and satisfactory preponderance of evidence. In such case, when considering real estate, the record title must control.

The decree is affirmed, with costs.

MOORE, C. J., and McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.