MERRILL *v.* BRANT.

HILL *v.* BRANT.

1. MECHANICS' LIENS—LANDLORD AND TENANT—LEASEHOLD INTEREST—CONTRACTS.

If the owner of real property is to be held liable for liens under the mechanics' lien law, it must be by virtue of some contract express or implied; his property cannot be taken to satisfy an indebtedness incurred by his tenants under an arrangement to. which the lessor was not a party. 3 Comp. Laws, § 10710 (5 How. Stat. [2d Ed.] § 13766).[1]

2. SAME.

Evidence that defendant, the owner of a hotel, leased it to tenants for a five-year term, one of them operating the bar, kitchen and cafe, the other having possession of the remainder, that although defendant consented to various alterations proposed by the tenants, he did not order them made, took no part in the supervision of the labor, nor directed its progress, that he at no time discussed the cost of the work with the claimants, that he allowed to the tenants the sum of $300 on rentals for the improvements, and that the tenants made what payments the contractors received, *held*, insufficient to establish a contract of the lessor expressly or by implication.

Appeal from Berrien; Coolidge, J. Submitted June 18, 1912. (Docket Nos. 142 and 143.) Decided May 28, 1913.

Bills by Levitt L. Merrill and others and by Richard Hill and others against Edward Brant and others for the enforcement of mechanics' liens, the suits being consolidated by consent. From a decree for complainants, defendants appeal. Reversed as to Brant; affirmed as to remaining defendants.

[1]On the question of the power of a lessee or vendee to subject owner's interests to mechanics' liens, see note in 23 L. R. A. (N. S.) 601.

*Cady & Andrews,* for complainants.

*George W. Bridgman,* for defendant Edward Brant.

BIRD, J. The bill of complaint in this cause was filed to enforce several mechanics' liens against the Hotel Benton in the city of Benton Harbor. Certain changes and repairs were made in the interior of the hotel in February and March, 1910, involving an expenditure of about $1,000, in which the carpenter, the mason, the plumber, and the decorator participated. Failing to receive all their pay, they filed liens under the statute and are now seeking to enforce them in this suit. By stipulation of the parties, the cases were tried and disposed of as one, and it is stipulated that the same course may be followed in this court.

There was but one question raised in the trial court, and that was as to whether the defendant Brant, who owns the hotel, was liable for the claims. At the time the claims accrued, he was the owner of the hotel, but it was under a five-year lease to defendant Collins, his son-in-law. In February, 1910, the lease to Collins was modified to the extent of giving to defendant Ronegar a five-year lease, commencing March 1st, of three rooms on the ground floor, to be occupied as a saloon, cafe, and kitchen. Collins and Ronegar had arranged to change the hotel from the American to the European plan. Collins was to run the hotel and Ronegar the saloon and cafe, and the expenditures were made in furtherance of this plan.

It is the contention of the defendant Brant that he is in no way responsible for the labor and materials which went into the hotel; that he did not order the work done; that he never agreed to pay for it; and that no one of the complainants ever asked him to pay for it. He testified that when he made the lease to Ronegar, he agreed with him to allow him $100 toward the improvements in the dining room, and that later, when Ronegar complained that it was costing so much

more than he had expected, he allowed him $200 more on the rent. The complainants claim that defendant Collins acted as the agent of Brant in ordering the work done, and nearly the entire testimony is devoted to an attempt to establish the agency of Collins. At the conclusion of the hearing, the trial court made a decree fixing the amount due to each claimant and decreeing the same to be a lien against the hotel and providing for foreclosure in the event of failure to satisfy the decree.

If defendant Brant is to be held liable to pay the liens, it must be by force of some contract express or implied. 3 Comp. Laws, § 10710 (5 How. Stat. [2d Ed.] § 13766). No one of the claimants testified that he made any contract with Brant, and no one of them testified that Brant agreed to pay him, and no one of them testified that he ever requested Brant to pay him. But it is said his son-in-law, Collins, acted for him. This appears to be based largely upon the fact of his being a son-in-law, and that Collins acted for or with him when the lease was made to Ronegar. This has but little force with us from the fact that Collins was interested in the lease, and, if Brant was to execute a lease of the three rooms to Ronegar, Collins would have to release them. It is further said that Collins and Brant conferred about the work while it was in progress, but, when the witnesses were asked what Brant said, none of them could detail it; they saw them looking at the work and motioning, and they concluded they were talking about the work. It is further said that Brant was around the hotel nearly every day during the progress of the work, and that on one or two occasions he made comments concerning it as to how well it would look when finished, and that it would cost considerable, but no one testified that he directed or attempted to direct the work in any way.

A study of the record convinces us that Collins and

Ronegar set about to make these changes on their own account. Ronegar had a five-year lease and Collins had a five-year lease with the right of renewal in 1913, and they would therefore be the immediate beneficiaries of any improvements that might be made. Collins, by reason of his relation to Brant, undertook to and did get his consent to lease to Ronegar, and also his consent that the changes might be made, and further than to donate toward the cost of the improvement we are not impressed that defendant Brant took any part in it. The testimony, as a whole, does not read in a way that convinces us that the improvements were made by Brant personally or through the agency of Collins. It is said that Brant was in poor health and unable to give the work his personal attention, and therefore acted through his son-in-law. Later, when it was sought to charge him with notice that the work was being done, it was said he was at the hotel nearly every day. If the work were done in pursuance of a contract with Brant, it proceeded along rather unusual lines in that the mechanics were all set in motion without a word from Brant personally, and, notwithstanding the fact he was present nearly every day, he made no attempt to dictate how or when the work should be done. He discussed with the mechanics neither the work nor the cost thereof. If this were Brant's contract, it is not clear to us why he should have paid Ronegar $300 instead of paying it to the mechanics, and just why Ronegar should have paid between $400 and $500 to the mechanics on Brant's contract is not satisfactorily explained. And it would seem as though complainants would have asked defendant Brant to pay their claims before beginning suit if they had understood that he was obligated to do so. Defendant Brant's property should not be taken to satisfy these claims unless a contract, express or implied, is established to which he was a party. *Peninsular General Electric Co.* v. *Norris,* 100

Mich. 496 (59 N. W. 151) ; *Wagar* v. *Briscoe*, 38 Mich. 587.

We think the testimony fails to establish such a contract, and for this reason relief must be denied complainants and the bill dismissed as to defendant Brant. The decree will be affirmed as to the other defendants. The defendant Brant will recover his costs in both courts.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.