JOHN WALLACE SONS CO. v. WILKINSON.

1. MECHANICS' LIENS—HOMESTEAD—HUSBAND AND WIFE—SIGNATURE OF WIFE—CONTRACTS.

A contract to furnish materials for a homestead occupied by defendant and his wife is not valid unless it is signed by both husband and wife.

2. Same—Remodeling—Contracts.

> Complainant, a materialman, furnished lumber and ma-
> terials for the reconstruction of a house upon real property
> which belonged to one of the defendants. The premises
> were occupied by a son-in-law of such owner, as the home-
> stead of himself and family. The owner was not a party
> to the contract. No evidence was offered which estab-
> lished an agency in the son-in-law to bind the owner.
> *Held*, that a lien could not be decreed upon the real prop-
> erty for the value of materials entering into the remodel-
> ing of the house.

Appeal from Berrien; Bridgman, J. Submitted
June 5, 1914. (Docket No. 30.) Decided July 24,
1914.

Bill by John Wallace Sons Company, a corporation,
against Lucy A. Wilkinson, Adin H. Morton, and
others, for the enforcement of a mechanic's lien.
From a decree for defendants, complainant appeals.
Affirmed.

*G. M. Valentine,* for appellant.

*John C. St. Clair* and *James O'Hara,* for appellees
Morton and Wilkinson.

Moore, J. The bill of complaint is filed to enforce
a lien, under the mechanic's lien statute of this State,
upon lot 209 and the house thereon, in the city of St.
Joseph, Mich.

Complainant is a dealer in building materials, and
began furnishing materials to defendant Lessing Oc-
tober 14, 1911, and so continued until the 16th day of
December, 1911.

We quote from the bill of complaint as follows:

"Your orator shows that about the year A. D. 1904,
Lucy A. Wilkinson became the owner in fee of lot 209
of the original plat of the village (now city) of St.
Joseph, Michigan, and that she has ever since that
time been the owner of the same, except as in this

paragraph hereinafter stated. Further, that Adin H. Morton is the son-in-law of said Lucy A. Wilkinson, and that in the year 1911 and prior to October 14, 1911, she entered into a contract or agreement with said Morton, by which he, the said Morton, should and did have an interest in or become the owner or part owner of said lot, the precise nature of said contract or agreement your orator is not able to state, and that said Morton should for himself and the said Lucy A. Wilkinson rebuild, repair, and improve the dwelling house on said lot 209; and your orator avers that the said Morton became and was, the agent of said Lucy A. Wilkinson for the purpose of making said improvements and repairs, and for the purpose of making contracts in reference to the same. Your orator shows that at some time in the summer of the year 1911, and prior to October 14, 1911, the said Lucy A. Wilkinson and the said Adin H. Morton made a contract and agreement with one John Lessing, wherein and whereby it was agreed that the said John Lessing should build, construct, alter, improve, and repair for them the dwelling house on said lot; but the precise terms of said contract your orator is not able to state."

The bill then sets out in detail the material furnished by it to Mr. Lessing, claiming a balance due to complainant of $674.96. The fourth paragraph avers the service upon Mr. Morton of a notice reading:

"ST. JOSEPH, MICH., Nov. 27, 1911.
"To Adin H. Morton,
            "Main Street:
    "Take notice that the undersigned is furnishing John Lessing, contractor, certain material for rebuilding a certain house situated on the following described property, number 608 Main street, this city.
            "Yours truly,
                "JOHN WALLACE SONS COMPANY."

It is not necessary to refer to the other averments of the bill further than to say there is no suggestion therein that the wife of Adin H. Morton had any interest in the property, or had any part in making the

contract with Mr. Lessing. It will be observed that she is not made a party to this proceeding.

Defendants answered fully.

Three defenses were urged as follows:

(1) That the premises are the homestead of defendant Morton, his wife and daughter, who have been in the open, exclusive possession of same for the last 15 years or more, paying the taxes, insurance, making and paying for the improvements as needed; Mrs. Morton, who is not a party to these proceedings, not having signed the contract for the remodeling.

(2) That, even if the homestead rights of said defendant Morton and family cannot prevail, still, the title to the property being in a stranger to the contract, the complainant is not entitled to any lien on the building itself under the third section of the lien law, for the reason that the work was not furnished for a new and original building.

(3) For the reason that there was tendered to complainant, before this action began, an amount more than sufficient to satisfy any lien that the complainant could possibly have been entitled to, and its refusing the tender discharged its lien, if any it ever had.

The case was heard in open court, and a decree entered dismissing the bill of complaint.

A careful reading of the entire record shows that at his decease, more than 30 years ago, lot 209 and other property was owned by John Wilkinson, who left surviving him six heirs, his widow, Lucy A. Wilkinson, Alecta Hamilton, a daughter by his first wife, Frank N. Wilkinson, Charles Wilkinson, Eva Morton, wife of defendant Morton, and Margaret Needham. Charles died without issue, and Alecta Hamilton quitclaimed her interest in the estate to the widow in 1883. Defendant Morton, his wife Eva, and daughter Hazel, have occupied the premises for the last 15 years and more, and claim it as their homestead. Except as above stated, the title to the lot stood in the estate of John Wilkinson until 1904, at

which time Frank Wilkinson and Margaret Needham quitclaimed their interest to Lucy A. Wilkinson. It is claimed that at this time Mrs. Wilkinson made a will, which will be mentioned later. The record title stood in the name of Eva Morton and the widow, and remained that way until after the Lessing contract for the improvement had been made, and complainant had begun to furnish defendant Lessing material on the job. Mr. Morton made a contract with John Lessing for $1,710 on October 9, 1911, to remodel the building on the lot. On October 14, 1911, complainant began to furnish materials to Mr. John Lessing. Mr. Morton was an employee in the postoffice. The claim on his part is that it was understood from the time in 1904 when the deeds mentioned above were made, and for a long time before, that lot 209 should belong to Mrs. Morton, and from then on was her homestead, and the homestead of her husband and their daughter, who was born and always lived in the house until the time the contract was made to Mr. Lessing, and that it was their intent as soon as the remodeling was done to resume living there.

It was also shown that the son Frank Wilkinson lived at the corner of Main and Market streets, with his family, and that the daughter Mrs. Needham, with her family, lived on Main street, under a like understanding, and that to accomplish this it is claimed the deeds in 1904 were made, and Mrs. Lucy A. Wilkinson made her will.

It also appears that for many years Mr. Morton made repairs on the house, filled in the lot at an expense of $200, and that he and his wife regarded the property as their homestead, and treated it as their own.

It should be remembered, also, that Mrs. Morton, as the heir of her father, had at least a one-fifth interest in the property.

It is the claim of Mr. Morton that he had $300 or $400 of his own when he entered into the contract with Mr. Lessing, and that he negotiated a loan from the bank of $2,500, and that to secure the bank, and so that the record would justify the bank in making the loan, a deed was made by Mrs. Morton and himself to Mrs. Wilkinson, and she made a mortgage to the bank; that the deed was never delivered to Mrs. Wilkinson, but was put upon record with the mortgage, and the money was passed to the credit of Mr. Morton; and that Mrs. Wilkinson never had any of the money, never saw the contract, and did not see the house from before the time the contract was drawn until the house was ready to be papered, and that she had nothing whatever to do with the transaction, except as above stated.

The testimony of Mr. Morton is not uncertain. So far as she has knowledge of the facts, it is confirmed by the testimony of Lucy A. Wilkinson. Mr. Morton and Mrs. Wilkinson both testified that, in making the contract, Mr. Morton was not acting for Mrs. Wilkinson. Mr. Lessing made the contract with Mr. Morton, not as agent, but as acting for himself. He testified he never saw Mrs. Wilkinson.

The bill of complaint indicates that complainants supposed Mr. Morton had a contract interest in the property. The notice that they had commenced furnishing material ran to Adin H. Morton.

After the contract was entered upon, trouble arose between Mr. Morton and Mr. Lessing, and, though the latter had been paid more than he was at that time entitled to by the terms of the contract, he failed to go on with it. Mr. Morton then completed the building at a considerable more expense than the contract price, and attempted to settle with the complainant. His attorney called on them and attempted to arrange a settlement. It is Mr. Morton's claim that he com-

puted what the claim of complainant would be, and to guard against any contingency added thereto approximately $50, and had his attorney take the amount in gold to the office of the complainant and tendered it to them.

It is not disputed but that a tender was made; but complainant insists the amount was not large enough, and this litigation followed.

It should be remembered the materials were furnished to remodel an old building. If the house was a homestead, the contract should have been signed by the wife. If the house and lot was not a homestead, it belonged to Mrs. Lucy A. Wilkinson. She was not a party to the contract. Nor is there evidence from which the inference can fairly be drawn that, in making the contract with Mr. Lessing, Mr. Morton was acting as the agent of Mrs. Wilkinson. See *Merrill* v. *Brant*, 175 Mich. 182 (141 N. W. 550).

We do not deem it necessary to pass upon the question of the homestead (see *Maatta* v. *Kippola*, 102 Mich. 116 [60 N. W. 300]), or upon the question of the tender. The record does not disclose such a situation as to entitle complainant upon any theory to a decree.

The decree of the court below is affirmed, with costs.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.