In re SWEET LABORATORIES CO.

(District Court, S. D. Ohio. May 17, 1919.)

1. VENDOR AND PURCHASER ⟨⟩246—NATURE OF VENDOR'S LIEN.

A vendor's lien is a simple equity raised by the courts for the benefit of vendors, and it is indispensably necessary to the existence of such lien that the parties should stand in the relation toward each other of vendor and vendee of real estate, the purchase price of which has not been fully paid.

2. MORTGAGES ⟨⟩5—MORTGAGE DISTINGUISHED FROM VENDOR'S LIEN.

Where a creditor advanced money to the debtor for use in erecting a building on a lot owned by it, taking a deed to the property as security, and afterward reconveyed the same by a deed reserving a lien for his advancements, such lien was not a vendor's lien, but was in effect a mortgage.

3. MORTGAGES ⟨⟩151(3)—MECHANIC'S LIEN TAKES PRECEDENCE OVER MORT-GAGE GIVEN AFTER BUILDING COMMENCED.

Under Page & A. Supp. Gen. Code Ohio, § 8321, a mechanic's lien for work done on a building takes precedence of a mortgage given after the building was commenced for a past consideration, although before the contract was made under which the work was done.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(261 F.)

4. **Statutes** ⟨⟩226 — Adoption of statute of another state adopts its construction.

Where a Legislature adopts practically verbatim a provision of a statute of another state, which has been construed, the presumption is that it intended its own statute to receive the same construction.

In Bankruptcy. In the matter of the Sweet Laboratories Company, bankrupt. On petitions to revise order of referee. Reversed.

Hollis C. Johnston, of Gallipolis, Ohio, for petitioner Jones.
Frank M. Raymund, of Columbus, for petitioner Yoerger.

SATER, District Judge. The bankrupt company purchased certain real estate on which to erect a building for the conduct of its business. Jones, its vice president and one of its directors, advanced it money and also became liable for a considerable sum on its notes. The money and the proceeds of the notes were applied toward the construction of such building, the contracts for which were made by the company. On April 27, 1917, he took a deed to the premises from the company, at which time he executed and delivered to it an instrument which recites that the title to the real estate was held by him as trustee as security for advancements made and to be made to the company and to secure him for liabilities incurred by him on its notes and other obligations, and that he would reconvey the premises to the company whenever he was repaid and relieved from liability or so secured by second mortgage as would protect him. Such instrument was not recorded, but his deed was duly entered of record, after which work on the building proceeded under previously made and partly fulfilled contracts.

In early November, the company, believing it could sell enough stock to clear up its indebtedness asked for a reconveyance of its property. An accounting was had between Jones and the company about November 5, and it was found that, after deducting his unpaid stock subscription, there was due him $95,500. It was agreed that he should reconvey the property and should receive "a vendor's lien" for the sum due him. About November 19 notes were given him by the company for the above named amount, and at the same time he executed and delivered a deed to the corporation for the premises, in which deed the notes were described, and the amount thereof by some provision (apparently adequate, but not appearing in the record) made a lien on such realty. On December 14 the company made a contract with Yoerger for certain electrical work on the building, on the performance of which Yoerger entered on the day following, and which he fully completed on February 20, 1918.

The company did not file for record its deed from Jones until January 16, 1918. At the time of the delivery of such deed there was due from the company about $16,000, of which Jones was ignorant. The sum ripened into mechanics' liens, none of which are here in dispute. Yoerger perfected a mechanic's lien on the premises for the unpaid sum due him. The referee held the lien of Jones to be superior to that of Yoerger, and that Yoerger should prorate with

the other mechanic lien holders in the fund applicable to their payment. Both Jones and Yoerger brought the case here for review.

[1, 2] In the referee's court, as well as here, the argument proceeded on the theory that Jones had a vendor's lien on the premises, although his counsel concedes that, when he took the conveyance from the company, he held the real estate as mortgagee to secure certain indebtedness—a view which is manifestly correct. The lien which Jones has, whatever it may be called in his deed to the company, is not that of a vendor, but is reserved by express contract and is in the nature of, if not in fact, a mortgage. His reconveyance, with an express reservation of a lien for the sum due him, changed the form of his security, which was not for the unpaid purchase money of the realty, but for money advanced to construct the building thereon. Whether his deed to the company with such reservation is, under the circumstances surrounding its execution, in fact a new mortgage for a new consideration, within the rule stated in Walters v. Walters, 73 Ind. 425, 429, 430, and Jones, Mortgages (5th Ed.) § 527a, need not be decided. A vendor's lien is invisible, and not recordable, and is not the same as the express lien often reserved in deeds, or conveyances for the payment of purchase money, or as strict mortgages or deeds of trust securing it, or as security held by a vendor who has duly given a title bond, or as a lien reserved in a deed for money advanced or loaned. White v. Downs, 40 Tex. 225, cited in 29 Am. & Eng. Ency. Law, 734.

It is indispensably necessary to the existence of a vendor's lien that the parties should stand in the relation toward each other of vendor and vendee of real estate, the purchase money of which has not been wholly paid. The pure relation of debtor and creditor, or of buyer and lender, is incompatible with the existence of this species of lien, which is not the result of any agreement or any intention of a vendor or vendee, but is a simple equity raised by the courts for the benefit of the vendors of real estate. Hecht v. Spears, 27 Ark. 229, 11 Am. Rep. 784, 786; Royal Consolidated Min. Co. v. Royal Consolidated Mines, 157 Cal. 737, 110 Pac. 123, 137 Am. St. Rep. 165, 172; Tiernan v. Beam, 2 Ohio, 383, 384, 385, 15 Am. Dec. 557; Neil v. Kinney, 11 Ohio St. 58, 66, et seq.; Whetsel v. Roberts, 31 Ohio St. 503, 505; Chilton v. Braiden's Adm'x, 67 U. S. (2 Black) 458, 460, 17 L. Ed. 304.

We are not here concerned with a vendor's lien, or with the ordinary mortgage loan made by a lender to a mortgagor after the commencement of an improvement on the lots purchased, or a mortgage to secure unpaid purchase money for real estate conveyed by a vendor to a vendee. The lien which Jones has is for money advanced by him, prior to the execution of the deed in which his lien is reserved, for the erection of the bankrupt's building.

[3] Under sections 8310 and 8321, Ohio General Code, all perfected mechanics' liens attach and become operative as of the same date— the date of the performance of the first labor, or the furnishing of the first machinery, material, or fuel, by the head contractor under his original contract. Under the middle paragraph of section 8321,

Ohio G. C., the several bona fide mechanic's lien holders have no priority among themselves; i. e., they prorate as among themselves, excepting that a priority is given to persons obtaining a valid lien for manual labor performed during the 30 days immediately preceding the performance of the last labor. The last paragraph of section 8321, P. & A. Supp. G. C. Ohio, provides that—

"They [the several mechanic's liens] shall be preferred to all other titles, liens or incumbrances, which may attach to or upon such construction, excavation, machinery, or improvement, or to, or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said construction, excavation, or improvement."

The above section thus abrogates the previously existing rule as to mortgages given after the performance of work or the furnishing of material by one or more contractors and before work is performed or material furnished after such mortgage has been given, for which former rule and its application see Choteau v. Thompson, 2 Ohio St. 130; Ohio Savings, Loan & Investment Co. v. Johnson, 10 Ohio Cir. Ct. Dec. 752 (20 Ohio Cir. Ct. R. 96); Treadway & Marlatt's Ohio Mech. Lien Law, pp. 122, 131, 147.

[4] The present Ohio law was modeled largely after that of Michigan. Section 9 of the Michigan act (Comp. Laws 1915, § 14804; Wykes' Michigan Mech. Liens, § 111) is not stated in the same language as the Ohio statute, and does not declare that the several liens by several persons upon the same job shall have no priority as among themselves, but is couched in equivalent language, and provides that such liens shall be deemed simultaneous mortgages. It has been repeatedly held by the Michigan Supreme Court, in interpreting that section, that, in determining priorities, liens attach as of the date of the commencement of the building or improvement, regardless of the time when or the person by whom, particular work is done or materials furnished for which a lien is claimed. Wykes, p. 111, note, citing Kay v. Towsley, 113 Mich. 283, 71 N. W. 490, and other cases. The last paragraph of section 8321, Ohio G. C., is taken practically verbatim from section 9 of the Michigan act. The changes are so slight, and the language of the two passages is so clearly synonymous, that the two provisions must be held to all intents and purposes to be the same. It is reasonable to suppose that the Ohio Legislature, in adopting such provision of the Michigan act, did so in view of the construction which had been put upon it, and with the intention that it should receive the same construction as had been given it by the Michigan courts. Favorite v. Boohers, 17 Ohio St. 548, 555. The Michigan statute has been held to mean that a mechanic's lien takes precedence of a mortgage executed after the actual commencement of a building or improvement, although the contract for furnishing the materials and the performance of labor for which a lien is claimed was not entered into until after the mortgage was executed and recorded. Kerr-Murray Mfg. Co. v. Kalamazoo Heat, Light & Power Co., 124 Mich. 111, 82 N. W. 801; Wykes, pp. 114, 115, note. It follows from the foregoing that Jones' lien is subordinate to that of Yoerger, unless it falls within the exception regarding mortgages found in section 8321—1.

The provisions of section 8321 are severe, and, if unlimited, would quite often be productive of inconvenience, hardship, and loss, not only to the property owner but to contractors, subcontractors, materialmen, and possibly even to laborers. To ameliorate the harsh conditions imposed by section 8321, Ohio G. C., the Legislature therefore enacted section 8321—1, and thereby fixed the conditions under which an intervening mortgage may be taken and the proceeds thereof so disbursed as to insure a priority to the extent to which such proceeds are used and applied in the manner indicated by the mechanic's lien act. The section is too lengthy to be here abstracted, nor does the decision of the instant case require that such be done. If the holder of an intervening mortgage wishes to retain the priority of his lien, and to recover the money loaned, he will do well to follow closely the provisions of that section. Jones does not have, and never held, a mortgage such as is described by section 8321—1, nor did he, in providing funds, use or apply them or proceed in accordance with its requirements. His lien is therefore subordinate to that of Yoerger and those of the other lien holders. This view finds support in West Side Lumber & Mfg. Co. v. Lancaster Paper Mill Co., 64 Bull. App. Supp. 566, 26 N. S. 413, 50 App. 253, in which it appears that the mortgage occupied an intermediate place as regards mechanic's liens.

An order may be taken in accordance with the foregoing.