WINKWORTH FUEL & SUPPLY CO. v. BLOOMSBURY CORP.

1. MORTGAGES—RECORDING—REFERENCE TO PRIOR MORTGAGE.
   Recording of first mortgage subsequently to second mortgage does not affect rights of respective parties thereto nor rights of parties acquired in intervening period where second mortgage specifically refers to first mortgage.

2. MECHANICS' LIENS—SUBSEQUENTLY ACQUIRED INTEREST OF OWNER.
   Mechanics' liens for materials furnished after owner received his deed attach to his interest although he had no title when work on the building commenced (3 Comp. Laws 1929, § 13101).

3. SAME—MORTGAGES.
   Liens for materials used in building attach thereto as prior liens to that of purchase-money mortgage given pursuant to exercise of option in land contract that vendor would take such mortgage if purchaser would commence building $12,000 dwelling on vacant lot within 30 days (3 Comp. Laws 1929, § 13109).

4. MORTGAGES—MECHANICS' LIENS.
   Mortgages on property after work on building has been commenced take subject to valid mechanics' liens acquired incident to such construction (3 Comp. Laws 1929, § 13109).

5. MECHANICS' LIENS—MORTGAGES—PRIORITY OF LIEN—REMEDY.
   Mechanics' lien claimants *held*, entitled to liens in the instant case prior to those of mortgagees against the building but not against the land, the liens granted being sufficient to afford claimants ample remedy (3 Comp. Laws 1929, §§ 13103, 13109).
   POTTER, J., dissenting.

Appeal from Oakland; Doty (Frank L.), J. Submitted October 10, 1933. (Docket No. 38, Calendar No. 37,335.) Decided March 6, 1934.

Bill by Winkworth Fuel & Supply Company, a Michigan corporation, against Bloomsbury Corpora-

tion, a Michigan corporation, and others to foreclose a mechanic's lien.  Cross-bills by Percy H. Hamly, doing business as P. H. Hamly Hardware Company, and H. L. Claeys & Company, a Michigan corporation, against defendant Bloomsbury Corporation and others to foreclose mechanics' liens.  Decree for defendants Bloomsbury Corporation and Gleaners Life Insurance Society.  Plaintiff and cross-plaintiffs appeal.  Reversed, and decree entered for appellants.

*George O. Hansen,* for plaintiff.

*Frank Day Smith,* for cross-plaintiff Hamly.

*Clarence W. Blenman,* for cross-plaintiff H. L. Claeys & Company.

*Bulkley, Ledyard, Dickinson & Wright,* for defendant Bloomsbury Corporation.

*Schmalzriedt, Frye, Granse & Frye,* for defendant Gleaners Life Insurance Society.

NORTH, J.  Each of plaintiffs has a mechanic's lien on property in Bloomfield township, Oakland county.  Each of defendants has a mortgage on the same property.  In a proceeding to foreclose the mechanics' liens defendants had decree giving their mortgages priority.  Plaintiffs have appealed.  The mechanics' liens are for materials used in a new building.  The materials were furnished to W. C. Scott who purchased the land on contract August 25, 1931, and received a deed therefor September 15, 1931.  On the latter date he gave back a purchase-price mortgage to the Bloomsbury Corporation.  The mortgage was recorded September 18, 1931.  This mortgage provided that it "is a second mort-

gage subject to the prior rights of a certain first mortgage held by the Ancient Order of Gleaners securing the payment of the sum of $12,000.'' The mortgage to the Ancient Order of Gleaners was also given September 15, 1931, but was not recorded until December 30, 1931. This belated recording does not affect the rights of the respective parties because the record of the Bloomsbury mortgage gave notice of the Gleaners mortgage. *Redford Lumber Co.* v. *Knight,* 242 Mich. 695; *Houseman* v. *Gerken,* 231 Mich. 253.

Work on the building began August 20, 1931. The first furnishing of materials by each of the plaintiffs for which a lien is claimed was subsequent to the day Mr. Scott received his deed and subsequent to the date of recording the Bloomsbury Corporation's mortgage.

Plaintiffs' respective liens are not affected by the fact that Mr. Scott did not have title to the property when the work on the building was commenced, August 20, 1931. The statute expressly provides for a lien on "subsequent acquired" title.

"Every person who shall  *  *  *  furnish any labor or material  *  *  *  shall have a lien therefor upon such house  *  *  *  and also upon the entire interest of such owner, part owner or lessee in and to the lot or piece of land  *  *  *  to the extent of the right, title and interest of such owner, part owner or lessee at the time the work was commenced or the materials begun to be furnished  *  *  * *and also to the extent of any subsequent acquired interest of such owner.*" 3 Comp. Laws 1929, § 13101.

Mr. Scott subsequently acquired title. If he had acquired no title to the land, these materials having been used in a *new* building, the liens therefor would

have attached to the building only.  3 Comp. Laws 1929, § 13103.  But Mr. Scott subsequently acquired the fee and the mechanics' liens, under the quoted statute, attached to it subject only to prior liens, if any.

Are there prior liens?  The Bloomsbury Corporation sold this land to Mr. Scott on a contract containing a provision that if within 30 days he would start to build on this land a dwelling to cost at least $12,000 the vendor would give the vendee a deed and take back a mortgage for the balance of the purchase price.  The contracting parties complied with this arrangement.  Under such circumstances the vendor could not thereafter assert a lien prior to those of the material men.  We so held in *Hart* v. *Reid,* 243 Mich. 175.  The syllabus reads:

"Where a contract between the owners of land and the lessee provided not only for the lease of the land but that the lessee should erect a building thereon, under Act No. 140, Pub. Acts 1919, both the building and the real estate are subject to liens for unpaid claims for labor and materials furnished in constructing the building."

Under our holding in the *Hart Case,* as well as under the express provisions of 3 Comp. Laws 1929, § 13109, hereinafter quoted, it should be held that appellants' liens are prior to the Bloomsbury Corporation mortgage.  The latter's claim of priority is not aided by its assertion of a so-called purchase-price mortgage.  It is bound by the provision in the land contract that its vendee might take a deed and give back a mortgage within 30 days if he would begin construction on the land of a house to cost at least $12,000; and under the decision in the *Hart Case* these mechanics' liens are prior to the Bloomsbury mortgage.

The Gleaners Life Insurance Society made a loan of $12,000 on a lot that Mr. Scott had just recently purchased on a contract for $3,800. Obviously this was a construction loan. In fact, at the time this loan was made the new building on the land was in process of construction. To hold under such circumstances that a mortgagee's rights are prior to mechanics' liens is not only a violation of the express provision of the statute but it is a holding which would enable the mortgagee to pay over its money to the land owner and thereafter by way of enforcement of its mortgage lien to secure repayment from the sale of the materials furnished or work done by lien claimants. It is this type of inequitable transactions that is prevented by the statutory provision that those who make loans on property after the work on the building has been commenced must take subject to valid mechanics' liens acquired incident to such construction. The pertinent portion of the statute reads:

"They (mechanics' liens) shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said building or buildings, erection, structure or improvement." 3 Comp. Laws 1929, § 13109.

The instant case is governed by *Kay v. Towsley*, 113 Mich. 281. Applying the above quoted statute, the court there said:

"Subdivision 3, § 9, Act No. 179, Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893 (3 Comp. Laws 1929, § 13109), provides that mechanics' liens 'shall be preferred to all other titles, liens, or in-

cumbrances which may attach to or upon such building, machinery, structure, or improvement, or to or upon the land upon which they are situated, subsequent to the commencement of said building, erection, structure, or improvement.' This provision has been passed upon frequently by the courts, and it has been uniformly held that the lien has priority over a mortgage executed upon the lands or premises after the actual commencement of the building, though no part of the labor performed or materials furnished for which the lien is claimed was done or performed until after the execution and recording of the mortgage. *Haxtun Steam Heater Co.* v. *Gordon,* 2 N. D. 246 (50 N. W. 708, 33 Am. St. Rep. 776); *Murray* v. *Swanson,* 18 Mont. 533 (46 Pac. 441); Phillips on Mechanics' Liens (3d Ed.), § 216; 2 Jones, Liens (2d Ed.), § 1470; *Davis* v. *Bilsland,* 18 Wall. (85 U. S.) 659; *Dubois' Administrator* v. *Wilson's Trustee,* 21 Mo. 213; *American Fire Ins. Co.* v. *Pringle,* 2 Serg. & R. (Pa.) 138; *Lampson* v. *Bowen,* 41 Wis. 484; *Vilas* v. *McDonough Manfg. Co.,* 91 Wis. 607 (65 N. W. 488, 30 L. R. A. 778, 51 Am. St. Rep. 925); *Hewson-Herzog Supply Co.* v. *Cook,* 52 Minn. 534 (54 N. W. 751). It is held that, under such a provision, liens attach as of the date of the commencement of the building, erection, or other improvement, regardless of the time when, or the person by whom, the particular work was done or the materials furnished for which a lien is claimed. 2 Jones, Liens (2d Ed.), § 1470.''

See, also, *Kerr-Murray Manfg. Co.* v. *Kalamazoo Heat, Light & Power Co.,* 124 Mich. 111; *Peninsular Stove Co.* v. *Crane,* 226 Mich. 130, 137; and *In re Sweet Laboratories Co.,* 261 Fed. 810.

Under our former decisions above cited and the statutory provisions quoted, appellants' liens should also be held prior to the mortgage of the Gleaners Life Insurance Society.

Entirely apart from the foregoing, in consequence of the statutory provision hereinbefore cited which provides liens for materials and labor used in constructing a *new* building, appellants are clearly entitled to prior liens upon the building, if not upon both the building and the land.

"Any person furnishing services or materials for the erection of a *new* building or structure upon land to which the person contracting for such erection has no legal title, shall have a lien therefor upon such buildings (building) or structure; and the forfeiture or surrender of any title or claim of title held by such contracting person to such land shall not defeat the lien upon such building or structure of such person furnishing services or materials as aforesaid." 3 Comp. Laws 1929, § 13103.

Not only does the statute expressly give appellants prior liens on this new building, but even under the equities of the case a priority cannot justly be decreed to the Bloomsbury Corporation. It sold the land to Scott, but not the valuable building subsequently erected thereon. The Bloomsbury Corporation has not expended a dollar in the erection of this dwelling, but these lien claimants have. Equitably their liens on the building are prior to the so-called vendor's lien of the Bloomsbury Corporation which owned and sold to Scott the vacant lot only. And the mortgage of the Gleaners Life Insurance Company likewise was taken by it as one covering practically only a vacant lot, or at best a lot on which the construction of a building was just fairly commenced. That was the extent of its mortgage security. Equitably this mortgagee has no right to appropriate to the payment of its loan made to Scott the labor and material subsequently furnished by these lien claimants. Obviously the mortgagee

had full knowledge that the new building was in process of construction when the loan was made, and it was bound to know the law embodied in the statute above quoted (3 Comp. Laws 1929, § 13109) which gives priority to valid mechanics' liens as against mortgage loans made subsequent to the commencement of building operations. Reasonable diligence could have and would have fully protected the rights of the Gleaners Life Insurance Company by handling the mortgage money as a construction loan. If its negligence in failing to do so has resulted in a loss, such loss should not be shifted to the appellants who have complied with every statutory requisite to perfect, preserve and enforce their respective liens. As to the Gleaners Life Insurance Company's mortgage the equities are also with the lien claimants.

In accordance with the authorities noted in the earlier part of this opinion and for the reasons there stated, I think appellants' liens are prior to defendants' mortgages on both the land and the building erected thereon. However, some of my brethren are of the opinion that plaintiffs' priority of liens should be made applicable to the building only. In the instant case this will afford plaintiffs ample remedy. Therefore the decree entered in the circuit court will be set aside and one entered in this court giving plaintiffs prior liens upon the building but not upon the land. Costs to appellants.

NELSON SHARPE, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with NORTH, J.

POTTER, J. (*dissenting.*) Bill to foreclose mechanics' liens. From a decree for defendants, plaintiffs

appeal. Winkworth Fuel & Supply Company, a Michigan corporation, furnished material upon the real estate described in the bill of complaint, subsequently used in the erection and construction of a building thereon. Winkworth Fuel & Supply Company furnished the first material for which a lien was claimed October 2d, the last November 9, 1931; P. H. Hamly Hardware Company furnished the first material December 21, 1931, the last material January 9, 1932; H. L. Claeys & Company furnished the first material October 12, 1931, the last material January 4, 1932.

All lien claimants regularly filed their liens and gave proper notices. There are two real estate mortgages on the premises, one held by each of defendants. The real issue relates to the priority of the liens as against these two mortgages. August 25, 1931, the Bloomsbury Corporation, in consideration of $380 paid by Wilbur Carleton Scott, sold him the lands involved for $3,800; $380 of which was paid down and the balance of $3,420 to be paid in five years. The contract contained building and other restrictions. It contained a clause as follows:

"Seller further agrees that when the unpaid principal balance on this contract has been reduced to a figure not exceeding 90 per cent. of the original sale price, seller will give deed and take back a second mortgage for the then unpaid balance, which second mortgage is to expire at least six months before the due date of the first mortgage, but in no event is the life of the second mortgage to exceed five years from its date, with interest at the rate of six per cent. per annum, payable monthly, until due and at the rate of seven per cent. per annum on all overdue instalments; said second mortgage to be paid in monthly instalments of not less than $38 each, including interest, and further provided that said sec-

ond mortgage shall be junior to a certain first mortgage to be secured from the Ancient Order of Gleaners in an amount not exceeding $14,000 and running for a period of not less than five years.

"It is further agreed that in the event a building is not started upon the premises in accordance with the land and use restrictions set forth in the land contract within 30 days from the date of this contract, or in the event the purchaser sells, assigns or transfers his interest under this contract prior to the acceptance of said second mortgage by the seller hereunder, seller will be relieved from the obligation of accepting said second mortgage as herein provided."

September 15, 1931, the property having been deeded to Scott, he executed a mortgage to the Bloomsbury Corporation for $3,420 on the premises which sets forth:

"This is a second mortgage subject to the prior rights of a certain first mortgage held by the Ancient Order of Gleaners, securing the payment of the sum of $12,000 payable within five years from its date."

September 15, 1931, Scott also executed a real estate mortgage to the Gleaners Life Insurance Company in the sum of $12,000.

The deed to Scott and the mortgage to Bloomsbury Corporation were recorded September 18, 1931. The land contract in pursuance of which Scott acquired the property was not at any time recorded.

(1) It is claimed the rights of lien claimants date from the furnishing of the first material or from the first work done on the building. *Kay* v. *Towsley*, 113 Mich. 281, is relied upon. The rule there laid down has no application. *Restrick Lumber Co.* v. *Wyrembolski*, 164 Mich. 71. In that case the owners

in fee commenced the building. The contract was made with the owners of the land. After the commencement of the building the fee was deeded and a land contract taken back; a bill was filed to foreclose this deed and contract as a mortgage. Another bill was filed to foreclose mechanics' liens. The cases were consolidated. It was held the mechanics' liens were superior to the deed and contract because the mechanics' liens on the premises dated from the furnishing of the first material or the performance of the first labor on the building.

Section 13109, 3 Comp. Laws 1929, provides:

"The several liens herein provided for  *  *  * shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said building or buildings, erection, structure or improvement."

There was in *Kay* v. *Towsley, supra,* a basis for a lien,—a contract with the owners of the fee. Here there was no contract, express or implied, with the owner, part owner or lessee of the premises or any part thereof or interest therein. There was no basis for a lien. No lien could attach at that time. If the building had been built upon the land of the Bloomsbury Corporation by Scott and no change made in the title to the premises, no lien could reach the interests of the Bloomsbury Corporation; its title could not be affected by Scott's contracts to which it was not a party.

Mechanics' liens in this State are based solely upon contract.

"The kind of lien in question can originate only in contract, and no one is capable of making this contract who is not the 'owner, part owner or lessee of

the land' to be affected." *Wagar* v. *Briscoe,* 38 Mich. 587.

"No lien can be induced on any man's ownership except on the basis of his own indebtedness, and can then be extended no further than his ownership extends." *Wagar* v. *Briscoe, supra.*

"It was the evident intent of the legislature to provide for the lien only upon the actual interest which the owner, part owner, or lessee had at that time." *Peninsular General Electric Co.* v. *Norris,* 100 Mich. 496.

"And where the owners gave a deed to secure a loan, with a land contract back, a lien does not attach, under 3 Comp. Laws [1897], § 10712, providing for such lien, in case the person contracting for materials has no legal title." *Restrick Lumber Co.* v. *Wyrembolski* (syllabus), *supra.*

What is a lien? It is, says 2 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 1978, "A hold or claim which one person has upon the property of another as a security for some debt or charge."

"The right which a creditor has to obtain satisfaction of a debt or duty out of a specified *res* which is owned by another." *Vidal* v. *South American Securities Co.* (C. C. A.), 276 Fed. 855.

"A legal claim or charge on property either real or personal as security for the payment of some debt or obligation." 37 C. J. p. 306.

The decisions of this court have always required there must be title back of a lien. A lien may not attach without something to attach to. *Clark* v. *Raymond,* 27 Mich. 456; *Willard* v. *Magoon,* 30 Mich. 273; *Wagar* v. *Briscoe, supra; Peninsular General Electric Co.* v. *Norris, supra; Smalley* v. *Mitchell,* 110 Mich. 650; *Fuller* v. *Detroit Loan & Building Ass'n,* 119 Mich. 71; *Bauer* v. *Long,* 147 Mich. 351

(118 Am. St. Rep. 552, 11 Ann. Cas. 86); *Frolich* v. *Blackstock,* 155 Mich. 604; *Restrick Lumber Co.* v. *Wyrembolski, supra; Merrill* v. *Brant,* 175 Mich. 182; *F. M. Sibley Lumber Co.* v. *Letterman,* 234 Mich. 32.

As said in Rockel on Mechanics' Liens, § 162:

"If the person has no title or is not an owner within the meaning of the statute, improvements put on by him cannot give a mechanic's lien prior claim over a mortgage afterwards given for purchase money."

A lien cannot attach where there is no title to attach to. No lien can exist except as based on contract. One's property may not be taken without his consent without due process of law and without just compensation. The statute, 3 Comp. Laws 1929, § 13109, applies only to liens; to something which has attached to or may attach to the land,—to a claim based upon contract, express or implied, with the owner, part owner or lessee of the land or of some interest therein. There can be no priority of liens on the land here involved based upon the first furnishing of material or performance of work, because the basis of a lien,—a contract, express or implied, with someone having an interest in the premises is wanting. The statute regulating priority of liens had, up to this point, no application.

(2) Some time after the first material was furnished which entered into the building erected by Scott, he purchased the premises on land contract. There had been no contract to furnish materials with his vendors. The materials furnished were not furnished under any contract, express or implied, with the owner, part owner or lessee of the premises or any part thereof, or interest therein. When the contract of purchase was made by Scott he went into possession.

One dealing with another in possession of premises is chargeable with notice or knowledge of the nature and extent of the rights and title of the one in possession. *Woodward* v. *Clark,* 15 Mich. 104; *Russel* v. *Sweezey,* 22 Mich. 236; *Hommel* v. *Devinney,* 39 Mich. 522; *Seager* v. *Cooley,* 44 Mich. 14; *Atwood* v. *Bearss,* 47 Mich. 72; *Michie* v. *Ellair,* 54 Mich. 518; *Allen* v. *Cadwell,* 55 Mich. 8; *Corey* v. *Smalley,* 106 Mich. 257 (58 Am. St. Rep. 474); *Howatt* v. *Green,* 139 Mich. 289; *Delosh* v. *Delosh,* 171 Mich. 175; *Fraser* v. *Fleming,* 190 Mich. 238; *Slatkin* v. *Schumer,* 210 Mich. 513; *American Cedar & Lumber Co.* v. *Gustin,* 236 Mich. 351. Possession by a land contract purchaser is constructive notice of his rights. *Corey* v. *Smalley, supra; Fraser* v. *Fleming, supra.* Notice is a legal deduction from possession. *Delosh* v. *Delosh, supra; American Cedar & Lumber Co.* v. *Gustin, supra.* Constructive notice by possession is equal to constructive notice by record. *Fraser* v. *Fleming, supra; American Cedar & Lumber Co.* v. *Gustin, supra.*

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them: *Mayor, etc., of Baltimore* v. *Williams,* 6 Md. 235. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained. *Converse* v. *Blumrich,* 14 Mich. 108 (90 Am. Dec. 230)." *American Cedar & Lumber Co.* v. *Gustin, supra.*

(3)   The contract lien of a vendor is prior to that of a mechanic or material man who performs work or furnishes material on the property to the contract purchaser.

"We do not think our statute can be construed as creating a lien in such cases." *Fuller* v. *Detroit Loan & Building Ass'n, supra.*

The same rule applies between lessor and lessee. *Wagar* v. *Briscoe, supra; Peninsular General Electric Co.* v. *Norris, supra; Merrill* v. *Brant, supra.* These cases were decided in accordance with a great weight of authority. 40 C. J. p. 111. The rights of the lien claimants were not superior to the rights of the vendor and could not attach to or affect its interests in the land. The lien claimants were chargeable with notice of contract vendor's rights and with notice of the rights of the vendee under such contract. The land contract between the vendor and vendee provided for the deed and the mortgages subsequently given and lien claimants must be held chargeable with notice of the contents of such contract.

Lien claimants dealing with Scott were chargeable with notice of all his rights and title arising out of or based upon his possession, and with all that could have been ascertained by exercising reasonable diligence and making obvious inquiries in relation thereto. This constructive notice, arising from Scott's possession, of his rights in the premises and their basis is just as binding upon lien claimants as if the contract in which Scott was vendee had been recorded with the register of deeds.

In *Redford Lumber Co.* v. *Knight,* 242 Mich. 695, lien claimants asserted priority over a mortgage given and recorded subsequent to the commencement of the building. In disposing of this contention it was said:

"Defendant Union Trust Company, the only defendant to file brief here, contends, among other things, that—

" 'Where one supplying materials is put upon notice before the delivery of the same of the fact that there exists or is to be created a lien prior to his own, the rights of such lien claimant are prior to and superior over the rights of the persons supplying material.'

"We think defendant is right.   The lien attaches to the 'interest of the owner' and 'to the extent of the right, title and interest of such owner   *   *   * at the time the work was commenced or materials were begun to be furnished'   *   *   * .   Comp. Laws Supp. 1922, § 14796.

"In *Baker* v. *Mather,* 25 Mich. 51, it was held, quoting syllabus:

" ' 'Everybody taking a conveyance of, or a lien upon, land, takes it with constructive notice of whatever appears in the conveyances which constitute his chain of title.   A second mortgagee takes subject to a prior unrecorded mortgage expressly referred to in the deed to his mortgagor and excepted therefrom.'

"And, see, *Houseman* v. *Gerken,* 231 Mich. 253.

"The recital in the recorded Hartleb mortgage gave constructive notice to plaintiff that the parties in interest had agreed that the first mortgage to Society for Savings was to be replaced by another mortgage for $3,500 which was to continue to be the first lien.   Plaintiff's lien is subject to the condition of the title of which it had notice.   See *Union Terminal Co.* v. *Turner Construction Co.,* 159 C. C. A. 585 (247 Fed. 727, 11 A. L. R. 880); *Luce* v. *Stott Realty Co.,* 201 Mich. 587; 40 C. J. p. 288."

When Scott acquired the equitable title and right of possession he did so under land contract.   He was a vendee in possession.   Lien claimants dealing with him are chargeable with notice of his rights which were determined by the terms of his contract.

The contract of the vendee, of which lien claimants from Scott's possession must be charged with constructive notice, provided (1) for the giving of a deed to the vendee upon performance by him; (2) for the taking back by vendor of a mortgage which should be a second mortgage to secure the

remainder of the unpaid purchase price; and (3) for a first mortgage to the Ancient Order of Gleaners for $14,000. Evidently it was contemplated the $14,000 mortgage was to be for building purposes because its priority is based upon building on the premises.

(4) When the real estate was deeded to Scott he gave back a purchase-price mortgage which was made subject to the prior rights of a first mortgage to the Ancient Order of Gleaners of even date. Lien claimants assert priority over these mortgages, basing their right thereto first, upon the furnishing of the first material for the building erected by Scott August 20, 1931; and second, upon *Hart* v. *Reid,* 243 Mich. 175. When the first material was furnished there was, as we have pointed out, no contract; no title or interest in Scott; nothing to which a lien or claim or hold could attach. There could be none for the reason the right thereto is governed by the condition of the title when the first material was furnished and both essential elements of a valid lien or claim of lien,—a contract and a contractor who has an interest in the premises, were lacking.

(5) It is claimed *Hart* v. *Reid, supra,* overruled *Wagar* v. *Briscoe, supra; Peninsular General Electric Co.* v. *Norris, supra; Fuller* v. *Detroit Loan & Building Ass'n, supra;* and *Merrill* v. *Brant, supra.* The contract here involved did not provide Scott should build a building. The vendors' and mortgagees' rights were the same whether the vendee built or not.

In *Hart* v. *Reid, supra,* cases following the weight of authority as stated in 40 C. J. p. 113, cited above, were referred to, but the case was decided on its own pertinent facts which indicated the lease by the Grindleys, the owners of the premises, to Thomp-

son; Thompson's assignment of the lease to the Thompson Realty Company; the reassignment by the Thompson Realty Company of the rents and profits to accrue thereunder to the Grindleys; the mortgage of the leased premises by the Grindleys to secure the bond issue; the erection of the building on the premises by Thompson with money provided by the Grindleys; the provisions of the building contract in relation to the erection and insurance of the building whereby the Grindleys made a $50,000 profit; the assignment of the rents and profits together with the other facts made the Grindleys chargeable with liability for the acts of Thompson who, though not found to be their general agent, was held to be their agent in the erection of the building there involved, thus making the title of the Grindleys subject to mechanics' liens for labor and materials furnished by lien claimants in the erection of the Grindleys' building, on the Grindleys' land, by the Grindleys' money, and that the Grindleys' lease to Thompson under which by *mesne* assignments the Grindleys acquired the rents and profits, was but colorable for financing purposes. This case did not overrule and was not intended to overrule *Wagar* v. *Briscoe, supra; Peninsular General Electric Co.* v. *Norris, supra; Fuller* v. *Detroit Loan & Building Ass'n, supra,* and *Merrill* v. *Grant, supra.*

(6)   No lien could attach to the premises at all unless based upon a contract, express or implied, with the owner, part owner, or lessee of the premises. This is evident from a casual reading of the statute and is recognized by *Restrick Lumber Co.* v. *Wyrembolski, supra,* and cases above cited. Lien claimants' rights may not be based upon the furnishing of the first material.   There was no contract, express or implied, with the Bloomsbury Corporation, owners

of the premises. Scott had no title, legal or equitable, to the premises when these materials were furnished.

When Scott acquired the equitable title to the premises he did so under a land contract. He entered into possession of the premises under such contract which provided therefor. This contract contained the provision above quoted. Lien claimants, after Scott acquired equitable title to the premises and possession thereof, were chargeable with notice of his rights to the same extent as if his contract had been recorded. *Redford Lumber Co.* v. *Knight, supra.*

The contract by which Scott obtained an equitable title and possession of the premises, provided for the deed and mortgages subsequently given and the priority of such mortgages. The purchase-price mortgage was recorded. It referred to the first mortgage held by the Ancient Order of Gleaners for $12,000. This was constructive notice of both mortgagees' rights. *Houseman* v. *Gerken, supra; Redford Lumber Co.* v. *Knight, supra.*

Lien claimants may not complain that the mortgage to the Ancient Order of Gleaners provided for in the contract was to be $14,000 and the mortgage actually given was for but $12,000. There are no general equities in favor of lien claimants. None of the labor or materials for which liens are claimed were furnished until long after the contract by which Scott acquired the equitable title of the premises and possession was made, the contract carried out by Scott, the deed given by the Bloomsbury Corporation to Scott and the purchase-price mortgage provided for in the contract recorded which gave notice of the mortgage of the Ancient Order of Gleaners.

Lien claimants are entitled to liens, but such liens under the facts in this case must be held subordinate to the mortgage given by Scott to the Ancient Order of Gleaners of $12,000 and the purchase-price mortgage to the Bloomsbury Corporation by which it is subordinate to the Gleaners mortgage.

Decree should be affirmed, with costs.