## LOCKWOOD *v.* NOBLE.

1. RECORDING LAWS—LIS PENDENS—NOTICE.

    A *lis pendens,* under 2 How. Stat. § 6619, is effectual from the date of filing as notice of the claims made in the bill, irrespective of whether service upon all of the defendants therein is at the time complete.

2. SAME—NEGOTIABLE PAPER—MORTGAGE SECURITY.

    A purchaser of a note secured by a mortgage on land to which the mortgagor had no title at the time, which fact would have been disclosed by an examination of the records, is entitled to no benefit under the mortgage.

3. BILLS AND NOTES—BONA FIDE HOLDER.

    The dishonor of one of several notes secured by a mortgage puts a subsequent purchaser of the other notes upon inquiry, and he takes them subject to all the equities.

4. BANKRUPTCY—TITLE OF ASSIGNEE.

    An assignee in bankruptcy can convey only such title as his assignor had at the time he was adjudged a bankrupt.

Appeal from Huron; Beach, J. Submitted June 8, 1897. Decided June 28, 1897.

Bill by Frederick St. John Lockwood against Orange Noble and Charles E. Thompson to remove a cloud from title. From a decree for complainant, defendant Noble appeals. Affirmed.

The object of this suit is to remove a cloud from title, caused by a decree and sale of the lands described therein on the foreclosure of a mortgage. Complainant and defendant Noble derived title from Thomas S. Donohue, who was the owner in fee of the lands, May 29, 1867. On that day Donohue made a contract with Ayres, Learned & Wiswall for the sale of these lands for $3,000; a warranty deed to be given within 30 days. $2,400 was paid at the time the contract was executed, and the bal-

ance was to be paid by a 90-day draft. July 1, 1867, Donohue executed a warranty deed of this and other lands to W. F. Clark, Jr., and Henry A. Howe; taking back a mortgage to secure the purchase price, for the sum of $27,000. Howe and Clark, Jr., had full knowledge of the contract to Ayres, Learned & Wiswall. The deed and mortgage were recorded August 9, 1867. On December 16th of that year, Howe and Clark, Jr., conveyed an undivided one-third interest in said lands to W. F. Clark, Sr. February 8, 1868, Ayres, Learned & Wiswall filed a bill of complaint in the circuit court in chancery, alleging the above facts, and praying for a decree annulling and setting aside the deed to Howe and Clark, Jr., and from them to Clark, Sr. Donohue, Howe, and both the Clarks were made parties defendant. Upon filing the bill, a notice of *lis pendens* was duly filed and recorded in the office of the register of deeds. Personal service was had upon Donohue, Howe, and Clark, Jr. Clark, Sr., was a nonresident, and as to him an order of publication was obtained. Proofs were taken, and decree entered declaring the deed to Howe and Clark, Jr., and the one by them to Clark, Sr., to be fraudulent and void, and of no effect against the complainants, and declaring the title absolutely in them. A reference was made to determine the amount due the defendants or Donohue. It appeared that Donohue had no title to 240 acres of the land described in the contract, which was worth $3 per acre. At this time Clark, Sr., appeared, and Howe, Clark, Jr., and Clark, Sr., acknowledged and delivered to complainants a written acknowledgment of full satisfaction, stipulating that the decree should stand against them. Complainant, Lockwood, has succeeded by proper conveyances to all the title and interest of Ayres, Learned & Wiswall. It is conceded that complainant and his grantors have paid all the taxes from the year 1867 to the present time, and have exercised all the acts of ownership and possession which have been exercised by any one.

On August 27, 1868, Donohue assigned the mortgage to

one C. A. Davidson, which assignment was recorded on the same day. One Mason in some way acquired an interest in the mortgage with Davidson. September 22, 1869, Davidson and Mason filed their bill to foreclose, but did not make Ayres, Learned & Wiswall parties thereto. Decree was duly entered, and September 22, 1871, the lands were sold to defendant Noble at from $10 to $15 for each 40 acres. November 1, 1869, Howe, Clark, Jr., and Clark, Sr., were adjudged bankrupts by the district court of the United States at Detroit. No notice of these bankruptcy proceedings was ever served upon Ayres, Learned & Wiswall, or their representatives or assigns. August 15, 1871, under an order of the United States court, these lands, with others, amounting in all to 7,500 acres, were sold at private sale by the assignee in bankruptcy to defendant Noble for $50.

Defendant Noble was a party to the foreclosure proceedings by Davidson and Mason. In his answer he set up the sale of the land by Donohue to Ayres, Learned & Wiswall, the bill filed by them to enforce their claim, and also that Ayres, Learned & Wiswall had a good title. Defendant Thompson has no interest, except as the assignee of certain creditors of defendant Noble, and has only such rights as Noble shall be found to have. Noble claims title by virtue of his deed from the assignee in bankruptcy, and the commissioner's deed upon the foreclosure sale. The court held that Noble was not a purchaser in good faith; that the notice of *lis pendens* was valid as to Davidson and Mason, the assignees of the mortgage; and that complainant had a perfect title to the land.

*William T. Bope*, for complainant.

*Horace G. Snover* (*Elbridge F. Bacon*, of counsel), for defendant Noble.

GRANT, J. (*after stating the facts*). 1. *The Equities.* The equities are all with the complainant. The defend-

ant has none. The proceedings in the suit by Ayres, Learned & Wiswall to set aside the conveyances to Howe *et al.* were regular as to all the defendants except Clark, Sr.; and, if there was any irregularity as to him, it was cured by his subsequent appearance and stipulation. Noble purchased with full knowledge of all the facts. He knew, and alleged in his answer to the foreclosure bill, that the title of Ayres, Learned & Wiswall was valid, and that the attempted conveyance by Donohue, and the mortgage back to him, were a fraud. He paid substantially nothing, either for the title conveyed by the assignee in bankruptcy or upon the foreclosure sale. He paid only $53 in all for lands which are worth many times that amount. From the time of his alleged purchase to the commencement of this suit,—a period of many years,— he did not attempt to exercise any act of ownership or possession over these lands, while complainant and his grantors were exercising open and notorious acts of ownership. If, therefore, Noble has any standing in a court of either law or equity, it is because courts are powerless to prevent the accomplishment of a gross wrong. This brings us to a discussion and determination of the defenses relied upon.

2. It is urged that the *lis pendens* did not take effect from the date of its record, but from the date of the completion of the service upon all the defendants; that service was not complete as to Clark, Sr., and therefore the record of the notice was of no validity as to subsequent purchasers and mortgagees. The question is not open to discussion in this State. The statute says, "To render the *filing* of a bill constructive notice," etc., "it shall be the duty of the complainant to file for record," etc. 2 How. Stat. § 6619. The filing of this notice was notice to the whole world of the claim made in the bill, and took effect from the date of filing. *Alterauge* v. *Christiansen,* 48 Mich. 60; *Heim* v. *Ellis,* 49 Mich. 241. It was therefore the duty of Davidson and Mason to examine the record. Had they done so, the notice of *lis pendens* would

have informed them that the mortgagors' title was in dispute, and that, if the allegations in the bill were true, they had no title to mortgage.

3. It is next urged that Davidson and Mason were *bona fide* purchasers of these notes, and are to be protected because the notes are negotiable. There are two answers to this contention which demonstrate its fallacy: (1) The law does not permit a party to execute a negotiable promissory note and a mortgage collateral thereto upon land to which he has no title, and make the security good in the hands of a purchaser of the negotiable paper before due, when the mortgagor had no title at the time in the land, and an examination of the record would have disclosed that fact; and (2), when Davidson and Mason purchased their notes, others were past due, there being six notes all told. Some had been paid, but one was dishonored and unpaid. Davidson and Mason therefore were not good-faith holders, but took subject to all the equities in the case. *Abele* v. *McGuigan*, 78 Mich. 415.

4. The assignee in bankruptcy took only the title which his assignors had at the time they were adjudged bankrupt, and could convey only such title as his assignors had. This is a doctrine so sound and reasonable that it hardly needs the citation of authorities. We cite a few: *Goss* v. *Coffin*, 66 Me. 432 (22 Am. Rep. 585); *Hardin* v. *Osborne*, 94 Ill. 571; *Ex parte Dalby*, 1 Low. 431; *Ex parte Rockford, etc., R. Co.*, Id. 345. It follows that the assignee, having nothing to convey, conveyed nothing.

5. It is insisted that $600 was unpaid upon the contract given by Donohue to Ayres, Learned & Wiswall, and that the defendant is entitled to this amount and interest. It is established that Donohue had no title to 240 acres, and that it was worth $3 per acre. Howe, Clark, Jr., and Clark, Sr., recognized the injustice of compelling Ayres, Learned & Wiswall to pay the balance of the purchase price for this reason, and therefore, by stipulation,

consented to a decree to that effect.    There is no equity in requiring complainant to pay this amount.

The decree of the court below was eminently just, and is affirmed, with costs.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred. HOOKER, J., did not sit.