AMERICAN CEDAR & LUMBER CO. *v.* GUSTIN.

1. VENDOR AND PURCHASER — QUIETING TITLE — GOOD-FAITH PURCHASER.
   In a suit by cross-bill to quiet title to land, the conclusion of the court below that cross-plaintiff was not a good-faith purchaser, *held*, justified by the record.[1]

2. SAME—POSSESSION CONSTRUCTIVE NOTICE.
   As a general rule, possession of real estate is constructive notice of title in the possessor.[2]

3. SAME—CONSTRUCTIVE NOTICE.
   Constructive notice by possession is equal to constructive notice by record.[3]

4. SAME—CONSTRUCTIVE NOTICE BY POSSESSION OF WILD LAND.
   Although the possession of wild uncultivated land may not be evidenced in the same way as improved land, there must be such use or occupancy as would indicate to a reasonably prudent person that the occupant or possessor claimed rights therein.[4]

5. SAME—VENDEE IN POSSESSION UNDER CONTRACT NOT A TRESPASSER.
   Where a contract for the sale of land contemplated that the vendee should have possession with the right to sell or lumber the lands and apply the proceeds on the purchase price, the vendor could not well claim that the vendee was a trespasser.[5]

6. NOTICE—WHEN PERSON CHARGED WITH NOTICE.
   If a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make such obvious inquiries, he must be taken to have notice of those facts which, if he had used such ordinary diligence, he would readily have ascertained.[6]

---

[1]Quieting Title, 32 Cyc. p. 1372; [2]Vendor and Purchaser, 39 Cyc. p. 1744; [3]Id., 39 Cyc. p. 1746; [4]Id., 39 Cyc. p. 1749; [5]Id., 39 Cyc. p. 1623; [6]Notice, 29 Cyc. p. 1114; 13 L. R. A. [N. S.] 49; 27 R. C. L. 710, 719 *et seq.;* 3 R. C. L. Supp. 1519; 4 R. C. L. Supp. 1764.

7. VENDOR AND PURCHASER—GRANTEE'S RIGHTS.

Where a deed was valid as between the grantor and the grantee, but subject to the rights of the vendee under a land contract, the grantee secured all the rights of his grantor, including the right to receive any money due and unpaid on the contract.[7]

8. SAME—VENDOR SHOULD ACCOUNT FOR LAND OR TIMBER SOLD AFTER SALE BY CONTRACT.

Where the vendor, after selling land on contract, cut and sold timber therefrom, and falsely represented to the vendee the amount it received therefor, it should account to him for the balance.[8]

9. SAME—INTEREST—APPEAL AND ERROR.

Where the grantee was interested only in case there was any balance due and unpaid by the vendee under the contract, which did not call for the payment of interest on deferred payments, and it appears that the grantor was indebted to the vendee in a sum in excess of the interest, the grantee may not complain of the action of the court in disallowing the interest charge.[9]

10. SAME—PERSONAL DECREE FOR TAXES PAID—SPECIFIC PERFORMANCE.

Where the grantee paid delinquent taxes which it was the duty of the vendee to pay, he was entitled to a personal decree for same against the vendee, and the grantor should not have been allowed to treat it as a payment made by it and deduct it from the amount it owed the vendee.[10]

11. SAME—PERFECTING TITLE—GRANTEE OF VENDOR MAY NOT CONVEY TO VENDEE LESS THAN WHOLE TITLE.

Where the grantee took title to land subject to the rights of the vendee in a land contract, of which he had notice, he stood in the shoes of his grantor, and, therefor, is not entitled to reimbursement for sums spent in perfecting his title, nor may he convey less than the whole title.[11]

12. SAME — FAILURE TO RECORD CONTRACT IMMATERIAL WHERE GRANTEE HAD NOTICE THEREOF.

Where the grantee had notice of the vendee's interest in the land conveyed, he may not complain that the vendee's

[7]Vendor and Purchaser, 39 Cyc. p. 1664; [8]Id., 39 Cyc. p. 1625; [9]Id., 39 Cyc. p. 1663; [10]Id., 39 Cyc. p. 1653; [11]Id., 39 Cyc. p. 1653.

failure to record his contract made it possible for the vendor to defraud him.[12]

13. APPEAL AND ERROR—FAILURE TO PAY SPECIFIC TAX.
Where the validity of the land contract for failure to pay the specific tax provided in 1 Comp. Laws 1915, § 4268 *et seq.*, was not raised or considered in the court below, it will not be considered by the Supreme Court, on appeal.[13]

14. COSTS.
Where but a comparatively small part of the 880-page record would have been required to present the only issue decided in appellant's favor, he is allowed only one-third of the cost of procuring the transcript and printing the record.[14]

Appeal from Alpena; Emerick (Frank), J. Submitted June 16, 1926. (Docket No. 82.) Decided October 4, 1926. Rehearing denied January 3, 1927.

Bill by the American Cedar & Lumber Company against Harry K. Gustin for an accounting. Defendant filed a cross-bill to quiet title to land, making Herman Besser a party defendant. Defendant Besser filed a cross-bill to quiet title to land and for the cancellation of a deed making the Beaver Lake Club a party defendant. From a decree for defendant Gustin, defendant Besser appeals. Modified and affirmed.

*Sprague & Shepherd,* for defendant Besser.

*I. S. Canfield,* for defendants Gustin and Beaver Lake Club.

SHARPE, J. In 1908, William H. Sanborn, William T. Hoey and Frederick H. Reibenack were the owners of a considerable tract of land in Alpena and adjoining counties and conducted lumbering operations thereon. The title to the lands was in Sanborn. At the same

---

[12]Vendor and Purchaser, 39 Cyc. p. 1707; [13]Appeal and Error, 3 C. J. § 592; [14]Costs, 15 C. J. § 663.

time the defendant Gustin owned a still larger tract in the same counties. Under agreement between the parties, Gustin transferred his lands to Sanborn as trustee. The lands were to be lumbered and sold on joint account and the net proceeds divided. Soon after this agreement was entered into, the plaintiff corporation was organized, the three parties above named holding equal shares of stock therein, and the title to all the lands, including those conveyed by Gustin, lodged in it. Lumbering was conducted and sales made by the plaintiff until 1911, when Reibenack bought the stock of Sanborn and Hoey and transferred a share to two other persons in order that the corporation might continue to function. Operations were continued until 1913, when the defendant Gustin, after expressing some dissatisfaction concerning the result of the operations, offered to sell his lands to plaintiff for $16,000 or purchase plaintiff's at the same price. Gustin's offer to purchase was accepted. It was arranged that as Gustin disposed of any lands or timber the proceeds should be credited on the $16,000. In December, 1918, approximately 9,600 acres were deeded to Gustin. In 1920, Gustin claimed that he had not only paid this amount in full but had overpaid it, whereupon plaintiff filed its bill of complaint herein for an accounting as to the amount due. Gustin answered, consenting to the accounting, and by cross-bill averred that moneys were due him thereon, and prayed for delivery of a deed of the lands and for decree for payment of the amount found to be due him.

In January, 1922, after the cause was at issue, the defendant Besser secured from the plaintiff a warranty deed of said lands for an expressed consideration of $20,000, and placed the same on record. Gustin thereupon by permission of the court filed an amended answer and cross-bill, in which Besser was made a party defendant and required by an order of the court

to answer. In it he prayed that Besser's deed be canceled as a cloud on his title. Besser answered, and by cross-bill asked that the title be quieted in him. He also averred that Gustin had conveyed some of said lands to the Beaver Lake Club, a corporation, and asked that it be made a party defendant and its deed canceled. The club was made a party defendant and answered, denying that Besser was entitled to any relief as to it.

The trial court, by decree filed on August 18, 1924, ordered plaintiff to convey the lands to Gustin and granted a decree in his favor against plaintiff for an overpayment in the sum of $3,592.96. He canceled the Besser deed, but ordered Gustin to pay Besser $50, which he had paid to remove an apparent cloud upon the title to one parcel of said land. The defendant Besser appeals.

1. Besser's Title. It is insisted that Mr. Besser was a good-faith purchaser, without notice, actual or constructive, of the equitable claim of Mr. Gustin. The trial court in his opinion, after reviewing the proofs at some length, said:

"I am of the opinion that Mr. Besser, when he obtained his deed in January, 1922, had such notice and knowledge of the claims of Mr. Gustin, and his grantee and lessee, the Beaver Lake Club, as would apprise an ordinarily prudent and honest man that he ought to inquire further before purchasing the lands involved, as to the extent, nature and foundation of such claim. * * *

"He bought the lands in great haste for an inadequate consideration, and, in my judgment, was not a *bona fide* purchaser of the same."

A careful consideration of the entire record satisfies us that he reached the right conclusion.

Mr. Besser had long been a resident of Alpena county. He had for many years dealt extensively in timber and timber lands in that and the adjoining counties, and was able to estimate the quantity of timber on land

and to fix its value and that of the land on which it was standing. He visited the lands in question, known as the Beaver Creek lands, with a view to their purchase in the year 1912 and again in 1917 and 1920. He testified, relative to his purchase, that he casually met Reibenack in a store in Alpena and asked him if his land in 29-5 was still for sale, and, on being informed that it was, asked the best price he would take for it; that Reibenack went to the back part of the store and returned, handing him a paper on which was written "$20,000;" that he said the price was too much and that Reibenack "finally got down to a $6,000 basis and I was to pay the taxes;" that Reibenack furnished him a plat of the lands and he went to the office of an abstractor and requested him to look up the title; that a little later the same day he went back and was told that the title was in the plaintiff except as to a few descriptions, the title to which was somewhat doubtful; that he then saw Frederick Polzin about getting the money; that they went to Robert Polzin's store, where he got $2,000 in currency and a check for $4,000; that Reibenack had the deed prepared and executed by himself as president and Frederick C. Burnett as secretary of plaintiff, and he paid him the $6,000; that when the deed was prepared there was talk about the revenue stamps which should be placed on it, and that Reibenack said there were some taxes and "Oh, well, make it $20,000," and that the stamps required for that consideration were placed on it and paid for by Reibenack; that he then went to the county treasurer's office and paid the taxes needed to entitle the deed to record ($1,320.91) and left it for record. All this occurred on the same day. An entry was made on the books of the plaintiff which stated that the purchase price was $20,000. The deed from Gustin to the Beaver Lake Club of a part of these lands was then on record. Reibenack

left Alpena the next day and had not been heard from at the time of the trial.

Mr. Burnett owned one share of stock in the plaintiff company, and acted as its secretary. He had kept its books for many years. He knew of Gustin's offer to purchase for $16,000 and the company's acceptance of it. He made out the account, a copy of which was attached to the bill of complaint, and signed and verified the bill filed as secretary and treasurer of the plaintiff. That the execution of the deed to Besser, if intended to cut off the rights of Gustin, was a gross fraud on the part of the officers of the company cannot be doubted. Burnett had no financial interest in the company. It is inconceivable that he would have executed this deed unless satisfied that Besser had full knowledge that the title of the company conveyed to him thereby was subject to the equitable claim of Gustin.

Beaver Lake is a fine body of water. Mr. Besser knew that several of the descriptions of the lands in question bordered on it. A dam was built at the outlet in the fall of 1920. Mr. Gustin was at that time one of the county road commissioners of the county, and at a meeting of the board of supervisors in May, 1921, the charge was made that work had been done on the dam by employees of the commissioners. An investigating committee was appointed and a hearing had. In the first column of the first page of the Alpena News published on May 26, 1921, under the headings "Hearing on Beaver Lake dam charge. Road committee of supervisors ends task," appeared a resumé of the hearing, in which the Beaver Lake dam and Beaver Lake Club were several times referred to. It is but fair to say that the commissioners were exonerated in the report made. This paper also had a column headed "Beaver Lake Items," in which the activities of the club and the guests en-

tertained at it in the fall of 1921 appeared almost daily.

In 1916 Gustin concluded to make a game preserve of a part of the lands around the lake. He employed a farmer named Allen, who lived on an adjoining section, to build a fence partially around them, and this was done. About seven miles of barbed wire was placed on posts set for that purpose. Much of the small timber was brushed out where the fence was built. Allen testified that he tacked up notices printed on cloth on trees and posts along this fence and that new notices were put up every fall thereafter. A number of other witnesses testified concerning this fence and the notices posted near it.

A witness named Goodrich, who was lumbering and looking after the lands for Gustin, testified that in December, 1919, he met Besser on the lands, talked with him about his lumbering for Gustin, and told him that Gustin was organizing a club and was going to build a clubhouse. He helped build the clubhouse, about 35 men being employed. A telephone line was constructed in 1921 connecting it with the Turtle Lake Club. He also testified that the lands were known and spoken of as the Gustin lands after 1918. Mr. Gustin testified that in September, 1921, he had a talk with Mr. Besser in which he told him that he had recently organized the Beaver Lake Club and that they were then building the clubhouse at the lake. These conversations are, however, denied. It also appears that there was repeated mention in the Alpena News of the activities of Gustin and the Beaver Lake Club, and a notice was at one time published in it by Gustin forbidding trespasses on these lands. Besser was a subscriber to this paper. Alpena is not a large city, and it seems incredible that a man engaged as was Mr. Besser did not read what was so published and had no knowledge of these activities or of the

organization of this club or its holdings when there was so much publicity concerning them.

In September, 1921, Gustin deeded a part of the lake frontage to the Beaver Lake Club and leased it a considerable acreage for hunting purposes for a term of 20 years. He had theretofore entertained friends at hunting parties on the land. The club, before getting its deed, had begun the erection of a clubhouse and completed it in the fall of 1921 at a cost of about $25,000. It stood on an elevation near the lake, and could be seen for miles around.

There is considerable proof that the merchantable timber standing on these lands was worth more than $40,000 at the time of the hearing, and a part of it is good farming land worth at least $10 per acre. When to this is added the value of the clubhouse ($25,000), it will be seen how inadequate was the price paid by Mr. Besser as the consideration for his deed.

In 1918 and 1919 Gustin conducted quite extensive lumbering operations on the lands, some of the lumber remaining in piles for more than a year.

Robert H. Rayburn, long a resident of Alpena county and an owner of lands adjoining those in dispute, called as a witness by Besser, testified

"It was generally known up there in that region that Gustin had a club and had men up there from Chicago and other places."

He at one time leased to Gustin the hunting and fishing privileges on a lot adjoining that deeded to the club. He further testified:

"Gustin claimed to own those lands but the title showed in the American Cedar & Lumber Company."

It is elementary that as a general rule possession of real estate is constructive notice of title in the possessor.

"Constructive notice by possession is equal to con-

structive notice by record." *Fraser* v. *Fleming,* 190 Mich. 238, 244.

Notice in such cases is a legal deduction from the fact of possession. *Delosh* v. *Delosh,* 171 Mich. 175. The possession of wild, uncultivated land may not be evidenced in the same way as improved land. There must be such a use or occupancy as would indicate to a reasonably prudent person visiting the land that the occupant or possessor claimed rights therein.

"Possession may be shown by any use of the land to which it is adapted, and which is calculated to apprise the world that the property is occupied. *Tate* v. *Pensacola, etc., Development Co.,* 37 Fla. 439 (20 South. 542, 53 Am. St. Rep. 251)." 39 Cyc. p. 1750, note.

It is urged that Gustin had no right of possession and, if he took possession, was in fact a trespasser. It is apparent that the agreement entered into between the plaintiff and Gustin, on which the bill in this case for an accounting was predicated, contemplated that Gustin should have possession and might sell or lumber the lands, the proceeds, however, to be applied on his indebtedness to the plaintiff. It admits in its bill that the relation then existing between them was that of a vendor and vendee under a land contract, and it asked the court for a decree that it be authorized to sell so much of said lands as might be necessary to satisfy the amount found to be due it on such accounting. In the light of these facts, the plaintiff could not well claim that Gustin's possession was that of a trespasser. We are impressed that Besser knew that Gustin had some rights in these lands, but was of the opinion, as was apparently Mr. Rayburn, that as there was nothing of record to show it the plaintiff might convey the title freed therefrom.

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them: *Mayor, etc.,* v. *Williams,* 6 Md. 235. If he

has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained." *Converse* v. *Blumrich,* 14 Mich. 108, 120 (90 Am. Dec. 230).

2. The Accounting. As Besser by his deed secured all the rights of the plaintiff in the lands described in his deed, he is entitled by his appeal to a consideration of the conclusion reached by the trial court on the accounting. Should any money be due from Gustin to the plaintiff, Besser would be entitled to it by virtue of the deed from plaintiff to him, which is valid as to the parties thereto.

The two items in dispute are, first, the allowance Gustin should receive on account of cedar cut on a part of the lands included in his purchase, and the matter of interest. As to the former, it appears that one Brilinski cut this cedar under an arrangement with the plaintiff whereby it received therefor $5,132.65 after the payment of all expense. Gustin testified that Reibenack told him the company had sold the cedar to Brilinski for $1,000, and that it was years after before he discovered that it had received the sum above stated. We have read the testimony bearing on this item with care, and are satisfied that the plaintiff should account to Gustin for the stumpage value received by it.

There is much force in the claim that Gustin should be charged with interest on the sums unpaid from time to time. The letter containing his offer and its acceptance by plaintiff say nothing about interest. He testified that it was agreed that none should be charged. The interest charges as they appear on plaintiff's books amount to $2,159.58. If this be charged to Gustin, it will in no way affect Mr. Besser

as there would still be a balance due Gustin from the plaintiff.   As Besser, who alone appeals, is not personally interested in the decree so far as it provides for payment by plaintiff to Gustin, and as Reibenack did not appear to defend the interests of his company, we are not disposed to interfere with the conclusion reached by the trial court that the interest charges should be disallowed.

3. Taxes Paid by Besser.   It is undisputed that after his purchase Besser paid the taxes delinquent on the lands, amounting to $1,320.91.   The trial court held that this sum should be treated as a payment by the plaintiff and that it should have the right to deduct it from the sum due by it to Gustin on the accounting.   Besser's counsel insist that he was entitled to a personal decree against Gustin for this amount.   In this we think they are right.   There was no obligation on the part of plaintiff to pay these taxes.   They had become a lien on the lands after the agreement was entered into under which Gustin took them over from plaintiff.   They were for Gustin to pay, and he, having brought Besser into a court of equity, should be required to do equity and repay to Besser the amount so paid which has inured to his benefit.

4. The Spratt-Herrick Lot.   After Besser's purchase he procured abstracts of title to the lands described in his deed.   He discovered that the record title to lot 3 of section 11, town 29 north, range 5 east, was defective.   He had in the meantime visited the clubhouse and found that it was located on this lot.   Thomas G. Spratt, late of Alpena, obtained a warranty deed of this lot in 1888.   He at that time was engaged with Nicholas J. Foley in buying and lumbering timber lands under the firm name of Spratt & Foley.   Foley testified that the title to these lands was usually taken in Spratt's name.   Spratt died in 1895.   His will was admitted to probate in Alpena

county. His property was bequeathed in equal shares to his wife, Ruth M. Spratt, and his daughter Bernice, now Bernice Spratt Herrick. Mrs. Spratt was named as sole executrix. On December 27, 1888, a deed of this lot, purporting to be made by Foley and his wife and Ruth M. Spratt to John Gibson, was recorded in the office of the register of deeds of Alpena county. It recites that the lands were "Spratt and Foley lands." The record does not show that it was signed by Mrs. Spratt, although the certificate of the notary attests that it was acknowledged by her. While Mr. Foley could not recall the transaction, he testified that the lands belonged to the partnership and that Mrs. Spratt received one-half of the consideration paid therefor. One of the witnesses to the deed was Louise M. Oakes. She testified that at the time it was executed she was living at the Spratt home and was satisfied that she had witnessed it there. She had had much experience as a stenographer and bookkeeper, and in answer to a question whether she would have signed it as a witness unless Mrs. Spratt had signed it answered:

"I certainly would not, with my experience, have signed it unless her name had been there, as a witness, and I didn't know the other party."

The Gibson title passed by mesne conveyances to the plaintiff and was carried on its books in the "Sanborn and Gustin Land Account." On discovering the condition of the record title to this lot, Besser, on February 11, 1922, secured a deed from Bernice Spratt Herrick, paying her $50 therefor.

In its bill of complaint the plaintiff alleges that Gustin offered and agreed in writing to take over all the lands and timber owned jointly by them and pay plaintiff $16,000 in full settlement of all accounts between them, and that plaintiff accepted this offer. From the date of such acceptance the relation of vendor and purchaser existed between them. The plaintiff

was thereby obligated to convey the lands therein referred to on payment to it of the sum agreed upon. This sum had been fully paid at the time the bill was filed, and Gustin was then in equity entitled to a deed of the lands.    Mr. Besser steps in and purchases the lands from the plaintiff.    Under our holding he acquired title subject to the equitable rights of Gustin in the land.    The plaintiff had color of title to the lot in question.    It conveyed it to Besser by warranty deed.    Besser thereafter stood in the shoes of plaintiff, and assumed the obligation to perform the contract which plaintiff had entered into with Gustin.

The court in its decree set aside the deed from the plaintiff to Besser.    While it makes no difference to Gustin from whom he obtains title, yet the deed from plaintiff to Besser is a valid one and conveyed to him all the interest the plaintiff then had in the lands described in it, but subject to Gustin's rights under his contract.    After executing such deed, the plaintiff had nothing left to convey.

In *Vos* v. *Dykema*, 26 Mich. 399, 401, it was said:

"It is said, however, that the deed is not effectual as a transfer of the contract, because, being with covenants, it is inconsistent with its terms that any such contract was in existence; and it cannot be held that the vendor intended to assign the contract by a deed which, so far from alluding to it, covenants that the title is unincumbered, and thereby in effect declares that there is no such contract.    But if the contract existed in fact, it is difficult to perceive how the vendor could possibly assert any rights under it, after giving an absolute conveyance.    He assigns all his right in the land; and that assignment is necessarily subject to the right of Dykema to acquire it on complying with the terms of the existing contract.    Strictly, it is not so much a transfer of the contract, as a transfer of the vendor's title, subject to the contract; and would require express and positive provisions for the purpose, to save to the vendor any rights in the contract, on the giving of such a deed."

In *Converse* v. *Blumrich, supra,* it was held (syllabus) :

"Buying the title or rights of the vendors in such contract, with knowledge of equities in their vendees, the purchaser becomes liable to the same extent, and in the same manner, as the persons from whom he bought."

This holding was said in *Edwards* v. *Clark,* 83 Mich. 246, to establish the right of a grantee to collect the rent due from a tenant without assignment of the lease or attornment on the part of the tenant.

We think the decree should have ordered Besser to convey to Gustin in performance of that contract, and it may be amended to do so.   What, then, must Besser convey?   Should he be simply ordered to convey the interest he acquired under his deed from the plaintiff or the entire interest which he had at the time the decree was signed?   Had the plaintiff perfected the record title to this lot prior to its conveyance to Besser, it seems clear that Gustin would obtain the benefit thereof.   39 Cyc. p. 1616.   We are impressed that the same reasoning applies to the deed which Besser obtained from Mrs. Herrick.   If obligated to convey this lot to Gustin, he must convey all the title he has at the time the conveyance becomes effective. What has been said on this subject applies with equal force to other lands for which he obtained deeds perfecting the titles thereto.

5. Conflicting Equities.   It is urged that Gustin, by his failure to secure and record proper evidence of his interest in these lands, made it possible for Reibenack to defraud Besser.   This claim is based on the assumption that Besser purchased in good faith and without notice of Gustin's interest in the lands. We are unable to agree with counsel that he did so.

6. Specific Taxes.   It does not appear that the specific tax provided for in section 4268 *et seq.,* 1

Comp. Laws 1915, had been paid upon the contract between the plaintiff and Gustin, and counsel for Besser insist that it is unenforceable in court for that reason. This question was not raised on the trial or considered by the trial court.     The contract was offered in evidence by the plaintiff.     The proof relating thereto was received without objection.     Besser, when he obtained his deed, assumed the obligation of the vendor therein. He may not at this time rely on such nonpayment as a defense.

The decree entered will be modified to conform to this opinion, and, as so modified, affirmed.

The question of the costs in this court is somewhat troublesome.     The only relief obtained by Besser on this appeal is in the allowance to him of a personal decree against Gustin for the amount paid by him in taxes  ($1,320.91).     It would have required but a comparatively small record to have presented this question to this court.     The printed record contains 880 pages.     In our opinion equity requires us to allow to him as a part of the taxable costs to which we find he is entitled on this appeal but one-third of the cost of procuring the transcript and printing the record.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.