DASSANCE v NIENHUIS

1. SPECIFIC PERFORMANCE—CONTRACTS—INDEFINITENESS—MATERIAL
   TERMS.

   Additional wording added to a contract form stating that "the
   buyer wants to check on zoning, an absolute description and
   filling in beach, etc." does not make the contract so indefinite
   as to preclude specific performance where the material terms of
   the contract such as the property, the parties, and the consider-
   ation were clearly established and where the additional word-
   ing did not concern material matters and was placed on the
   contract form by a real estate saleswoman solely for the office
   convenience of the realtor.

2. CONTRACTS—OFFER—ACCEPTANCE.

   No contract is formed unless an acceptance is unambiguous and
   in strict conformance with the offer.

3. CONTRACTS—QUESTION OF FACT.

   The question of whether parties by communication and by their
   acts have entered into a contract is not one of law but of fact.

4. APPEAL AND ERROR—FINDINGS OF FACT—CLEAR ERROR—LAW—EQ-
   UITY.

   Findings of fact made by the trial court will not be set aside
   unless clearly erroneous, whether the action is in law or equity.

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts § 102.
[2] 17 Am Jur 2d, Contracts § 62.
[3] 17 Am Jur 2d, Contracts §§ 3, 4.
[4] 5 Am Jur 2d, Appeal and Error § 822.
[5, 6] 55 Am Jur, Vendor and Purchaser § 688.
[7] 55 Am Jur, Vendor and Purchaser § 747.
[8] 17 Am Jur 2d, Contracts § 187.
   45 Am Jur 2d, Interference §§ 9, 26, 39, 41.
[9] 45 Am Jur 2d, Interference § 3.
[10] 45 Am Jur 2d, Interference § 61.
[11, 12] 45 Am Jur 2d, Interference § 57.
   71 Am Jur 2d, Specific Performance § 218.

5. NOTICE—VENDOR AND PURCHASER—INTEREST IN REAL ESTATE—REASONABLE MAN—FURTHER INQUIRIES—ORDINARY DILIGENCE.

Notice of the existence of a legal interest in real estate is not limited to awareness of the existence of that interest; a person who is aware of such facts as would lead a reasonable man to make further inquiries is taken to have notice of those facts which he would have discovered if he had used ordinary diligence.

6. NOTICE—VENDOR AND PURCHASER—INTEREST IN REAL ESTATE—CONTRACTS—POSSIBILITY OF LITIGATION.

A finding that a defendant had actual notice of the plaintiff's interest in real estate was proper where the defendant knew of the plaintiff's contract with the owner for the purchase of the real estate and the defendant knew of the possibility of a lawsuit if he closed with the owner.

7. LIS PENDENS—NOTICE—EFFECTIVENESS—TIME OF FILING.

A lis pendens is effectual as notice of the claims made therein from the time of its filing.

8. TORTS—CONTRACTS—INTENTIONAL INTERFERENCE WITH CONTRACT—PRIVILEGE.

One who without a privilege to do so induces or otherwise purposely causes a third person not to perform a contract with another or not to enter into or continue a business relation with another is liable to the other for the harm caused thereby.

9. TORTS—CONTRACTS—INTERFERENCE WITH CONTRACT—MALICE—WRONGFUL INTENT.

Malice or wrongful intent is not a prerequisite to liability for tortious interference with a contract.

10. DAMAGES—PUNITIVE DAMAGES—TORTS—CONTRACTS—INTERFERENCE WITH CONTRACT.

Punitive damages may be awarded for tortious interference with a contract where vindictive, willful, wanton, or malicious conduct is present.

11. COSTS—ATTORNEYS' FEES—PRIOR LITIGATION—SPECIFIC PERFORMANCE—INTERFERENCE WITH CONTRACT—CONSOLIDATION OF CASES.

A plaintiff may recover all the expenses, including attorneys' fees, reasonably incurred in prior litigation where the present defendant has by his wrongful conduct caused the plaintiff to defend or prosecute previous legal proceedings; consolidation for trial of actions for specific performance and interference

with a contract does not prevent the plaintiff from recovering the attorneys' fees incurred in the specific performance action where the plaintiff, if he had obtained the specific performance judgment first, would have been awarded prior attorneys' fees when suing for interference with a contract.

12. Costs—Attorneys' Fees—Expenses—Present Action—Prior Action.

Expenses, including attorneys' fees, incurred by plaintiffs in seeking damages for tortious interference with a contract are not recoverable where the expenses were incurred in the prosecution of the present not a prior action.

Appeal from Wexford, William R. Peterson, J. Submitted Division 3 November 13, 1974, at Grand Rapids. (Docket No. 18282.) Decided January 7, 1975.

Complaint by Donald Dassance and Anna Dassance against William Nienhuis, Lloyd Bennett, doing business as Bennett State Wide Real Estate, Larry Emmons, Suzanne L. Emmons, Theodore D. Dzuirman, and Gail P. Dzuirman for specific performance of a contract to purchase property, cancellation of conveyances of the property, and intentional interference with a contractual relationship. Judgment for plaintiffs. Defendants Emmonses, Dzuirmans, and Bennett appeal. Affirmed in part, reversed in part, and remanded for determination of allowable expenses and attorneys' fees against defendant Bennett.

*Herrinton, Herrinton & Hughes,* for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Richard O'Connor),* for defendants Emmonses and Dzuirmans.

*Hubbard, Fox, Thomas & Born* (by *Donald G. Fox* and *Thomas A. Bengtson),* for defendant Bennett.

Before: T. M. BURNS, P. J., and R. B. BURNS and CARLAND,* JJ.

T. M. BURNS, P. J.

An understanding of the chronology of events in the instant case is necessary for a proper consideration of defendants' questions on appeal.

On February 14, 1972, defendant Nienhuis, the owner of certain desirable land fronting on Pleasant Lake in Wexford County, listed that land for sale with defendant Bennett, a real estate broker. The listing was for a proposed price of $26,000, with $10,000 down, but subject to two leases which ran through 1975.

During April and early May of 1972, defendant Emmons submitted several different offers to purchase the Nienhuis property, all of which were rejected by Nienhuis. On May 26, 1972, plaintiffs signed an offer to purchase the property for $20,-000 and gave a $1,000 deposit check to Mrs. Johnson, a real estate saleswoman employed by defendant Bennett. In response to this offer, Nienhuis made a counteroffer of $23,000, said counteroffer being written on the front of the purchase order and subscribed by Nienhuis on the same day.

Upon being apprised of the counteroffer, the plaintiffs orally accepted. Mr. Dassance then mentioned that he wished to check into zoning and other matters, and Mrs. Bogart, another of defendant Bennett's saleswomen, told Mrs. Johnson to write on the back of the purchase order that the price was agreeable and that "buyer wants to check on zoning and an absolute description and filling in beach, etc". Mrs. Johnson pointed out that this was only for office information and that

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

these were not conditions or part of the agreement.

On the evening of May 26, 1972, Bennett called defendant Emmons, told him that a purchaser had been procured at a cash price of $23,000, which price was acceptable to Nienhuis and asked Emmons if he could meet that price. Later that evening Bennett called Nienhuis, told him they should give Emmons a chance to meet the price, and suggested giving him 30 days to do so. Nienhuis agreed to give Emmons until June 17, 1972, to raise the money, and Bennett advised Emmons of that fact.

On May 27, 1972, Bennett called defendant Emmons and asked him to come to his office and sign an offer at $23,000 cash. Mrs. Emmons went to Bennett's office and in his presence signed a $23,000 cash offer for the property, with closing set for June 17, 1972, subject to Emmons having full payment by closing and subject to discharge of the aforementioned two leases.

On June 1, 1972, Mrs. Dassance called Bennett's office to set up the closing arrangements. She was informed by Mrs. Bogart that the plaintiffs had only a "backup" offer and that defendant Emmons had to be given an opportunity to match the offer. On June 3, 1972, Mrs. Johnson brought the purchase order for the plaintiffs' signatures, and Mrs. Dassance signed for herself and her husband. At this time, Mrs. Johnson told Mrs. Dassance that Bennett had given Emmons until June 17, 1972, to match plaintiffs' price of $23,000.

On June 5, 1972, plaintiffs decided to put the matter in the hands of counsel, Jerome Moore. Moore promptly called Bennett, advised him that his clients had a valid contract, and asked for copies of documents and a firm closing date. A

letter to like effect was sent to both Bennett and
Nienhuis. Bennett informed Moore that negotia-
tions with Emmons were still pending and hinged
on Emmons' ability to raise the money and resolu-
tion of the question of the cancellation of the
leases. Moore also contacted defendant Nienhuis
and was told by him that he wanted plaintiffs to
have the property but that he relied on Bennett
and wanted his approval.

On June 10, 1972, Bennett called Mrs. Dassance
concerning their position on the leases, and upon
being informed that the leases were immaterial,
told her that the "property is yours", that the
lessees would not cancel their leases, and that
since Emmons would not take the property subject
to the leases, they (the plaintiffs) could plan on
closing the transaction on June 13, 1972. He prom-
ised to call back within a half-hour with a specific
time for closing, but failed to do so. Instead, he
called Emmons that same evening and Emmons,
for the first time, abandoned his position on the
leases, agreeing to take the property subject
thereto, and a closing for June 17, 1972, was
confirmed. On June 13, 1972, Emmons wrote Ben-
nett confirming his change of position on the
leases and affirming a planned closing for June 17,
1972.

On June 16, 1972, Bennett received calls from
attorney Moore and attorney Theodore Hughes,
who had been retained as local counsel for plain-
tiffs. Bennett advised Hughes that he was obli-
gated to give Emmons an opportunity to match
plaintiffs' price. Bennett called Emmons that eve-
ning. Emmons testified that Bennett told him that
Nienhuis was not ready to close and that Emmons
told Bennett he would arrive the next day anyway.
Emmons' co-defendant, Dzuirman, who was put-

ting up half the money, came to Cadillac on the 16th for the planned closing, but was called by Bennett and told that Nienhuis would not be available the next day. Bennett, to the contrary, testified that he was ready to close the morning of the 17th, but that Nienhuis, for reasons unknown, failed to appear.

On the morning of June 17, 1972, Bennett was visited by attorney Hughes, and later by Emmons and Dzuirman, who signed another offer to purchase at $23,000, and then returned to Pontiac. On June 19, 1972, Bennett called Emmons and scheduled a closing in Cadillac for June 20, 1972. On that day, attorney Hughes went directly to Nienhuis and made a cash tender for the property. Nienhuis called Bennett, who went to the Nienhuis home and advised Nienhuis not to close the transaction with the plaintiffs. He also told them that he had arranged a 2:00 p.m. meeting with an attorney who would advise Nienhuis as to what to do, and that he would call Hughes at 5:00 p.m. to tell him what they were going to do. Having become suspicious of the entire matter, Hughes quickly filed the complaint herein, along with a lis pendens which was recorded with the register of deeds at 3:35 p.m. that day.

At the 2:00 p.m. meeting, defendant Nienhuis was advised not to go through with the Emmons transaction. Notwithstanding this advice, Bennett advised Nienhuis to proceed with the sale to Emmons. Emmons and Dzuirman arrived later, and the parties proceeded with the closing of the transaction. The deed was recorded with the register of deeds at 5:00 p.m.

On June 20, 1972, plaintiffs commenced suit against defendant Nienhuis seeking specific performance of their contract to purchase the Nien-

huis property. On June 21, 1972, defendant Suzanne Emmons executed a warranty deed conveying the Nienhuis property to Larry Emmons, Suzanne Emmons, Theodore Dzuirman and Gail Dzuirman. Through amendments to their complaint, plaintiffs (1) on June 22, 1972, commenced suit against defendants Larry and Suzanne Emmons seeking to set aside and cancel the Nienhuis conveyance to Emmons; (2) on December 18, 1972, commenced suit against defendant Bennett seeking damages for tortious and intentional interference with the contractual relationship between plaintiffs and defendant Nienhuis; (3) commenced suit against defendants Theodore and Gail Dzuirman seeking to set aside and cancel the subsequent conveyance to them by Suzanne Emmons.

The cases were tried together, and trial was held before the court on May 18, 21, and 22, 1973, following which, on July 20, 1973, the trial court filed an opinion granting plaintiffs all relief requested. In its opinion, the trial court found as fact (1) that there was a contract between plaintiffs and defendant Nienhuis as of May 26, 1972; (2) that the recording of plaintiffs' notice of lis pendens preceded the Nienhuis-Emmons closing transaction; and (3) that defendant Larry Emmons possessed actual knowledge of plaintiffs' claim prior to the time of that closing.

On July 30, 1973, judgment was entered by the trial court resulting in cancellation of the conveyances to defendants Emmons and Dzuirman; specific performance of the Dassance-Nienhuis contract; and assessment of actual damages in the form of attorney fees and legal expenses and punitive damages against defendant Bennett for his tortious interference with the contractual relationship between plaintiffs and defendant Nienhuis.

All the defendants, except defendant Nienhuis, appeal as of right.

1. *Did plaintiffs have a valid contract, on which specific performance was properly granted?*

Defendants contend that by adding the words concerning zoning, fill-in, etc., to the contract the contract was made so indefinite as to preclude specific performance since the words referred to future actions by the plaintiffs. While it is true that specific performance is not an appropriate remedy where material matters of the contract are not ascertainable, *Henry v Rouse,* 345 Mich 86, 92; 75 NW2d 836 (1956), we are not faced with that situation here. In the case at bar, the material terms of the contract between plaintiffs and defendant Nienhuis such as the property, the parties and the consideration, were clearly established. Those matters which defendants claim to make the contract unenforceable were not material, and specific performance was, therefore, properly granted. See *Milner Hotels, Inc v Ehrman,* 307 Mich 347, 356; 11 NW2d 914 (1943); *Rathbun v Herche,* 323 Mich 160, 165–166; 35 NW2d 230 (1948).

Furthermore, defendants' argument rests on the invalid factual assumption that the words concerning zoning, etc., were placed on the contract form on behalf of plaintiffs. However, the trial court found otherwise; that is, that Mrs. Johnson put the wording on the form solely for office convenience, and the record contains ample evidence to support that finding including Mrs. Johnson's own testimony to that effect.

Defendants' claim that plaintiffs did not unequivocally accept defendant Nienhuis' counteroffer is also meritless. It is true, as defendants contend,

that no contract is formed unless an acceptance is unambiguous and in strict conformance with an offer. *Rapanos v Plumer,* 41 Mich App 586; 200 NW2d 462 (1972); *Harper Building Co v Kaplan,* 332 Mich 651; 52 NW2d 536 (1952).

"But when the question is whether parties, by oral communication and by their acts, have entered into a contract the conclusion to be deduced is not one of law but of fact, and must be determined as such." *Sines v Superintendents of the Poor for Wayne County,* 55 Mich 383, 386; 21 NW 428 (1884).

In the case at bar, the trial court found that plaintiffs had unconditionally accepted Nienhuis' counteroffer, and that the additional wording on the contract form was placed there solely for the convenience of the realtor. Whether the action is in law or equity, principal regard must be given to the special opportunity of the trial court to judge the credibility of witnesses, and findings of fact will not be set aside unless clearly erroneous. *Meyering v Russell,* 53 Mich App 695, 701; 220 NW2d 121 (1974). A review of the record in the instant case reveals sufficient facts from which the trial court could conclude that plaintiffs had unconditionally accepted defendant Nienhuis' counteroffer.

2. *Were defendants Emmons bona fide purchasers so as to preclude specific performance against them?*

Defendants maintain that the trial court's finding that defendants had actual notice of plaintiffs' claim was incorrect and not supported by the record. However, actual notice is not limited to awareness of the existence of a legal interest in the property, but also covers situations where a

party is aware of such facts as would lead a reasonable man to make further inquiries. If the party avoids making further inquiries, he is taken to have notice of those facts which he would have discovered if he had used ordinary diligence. *American Cedar & Lumber Co v Gustin,* 236 Mich 351, 360–361; 210 NW 300 (1926).

In the instant case, there was evidence presented at trial that defendant Emmons knew of the plaintiffs' contract and that he knew of the possibility of a lawsuit if he closed with Nienhuis. Under these circumstances, we conclude that the trial court's finding of actual notice was based on sufficient evidence, and we decline defendants' request to overturn that finding.

Defendants also challenge the trial court's finding that defendants had constructive notice of plaintiffs' claim arguing that since the lis pendens notice was filed only minutes before the closing transaction, they should not be held to have constructive notice of plaintiffs' interest. This argument is without merit. It has long been held in this state that a lis pendens is effectual from the time of filing as notice of the claims made therein. *Lockwood v Noble,* 113 Mich 418, 421–422; 71 NW 856 (1897).

3. *Does tortious interference with a contract require as one element that the tortfeasor act with malice or intent to harm?*

Defendant Bennett asserts that since there was no evidence of malice or wrongful intent on his part, the trial court erred in finding that he had tortiously interfered with plaintiffs' contract.

In *Meyering v Russell,* 53 Mich App 695, 704–705; 220 NW2d 121 (1974), this Court examined

the modern law of interference with a contract and stated:

"Appellants concede that damages may be awarded where a tortious interference with another's contractual rights occurs, but assert that the rule requires the intentional doing of a wrongful act or other conduct indicating malice. Early cases did hold that malice was a prerequisite to liability but, as the law evolved, malice became less and less important. Today, liability may be found if the interference is by inducement or is purposeful interference. See 4 Restatement Torts, § 766, pp 49–63.

" 'Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.'

" '* * * d. Induces or otherwise purposely causes. The word "induces" refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or by intimidation, B is free to choose the other course if he is willing to suffer the consequences.'

" 'h. Inducement by offer of better terms. Another method of inducing B to sever his business relations with C is to offer B a better bargain than that which he has with C.' " 4 Restatement Torts, § 766, pp 49, 54–55, 58.

It is clear that under this standard, malice or wrongful intent is not a prerequisite to liability. All that is required is a defendant's knowledge of the contract and his unauthorized interference with it. By persuading Nienhuis to sell the land to Emmons and not to plaintiffs, knowing all the time that plaintiffs had a prior contract with Nienhuis, defendant Bennett "induced" Nienhuis to breach his contract with plaintiffs, and under *Meyering* and the Restatement, this constituted

tortious interference with plaintiffs' contract. Therefore, the trial court's finding that defendant Bennett tortiously interfered with plaintiffs' contract was proper.

4. *Are punitive damages properly awarded in an action for tortious interference with a contract?*

Defendant Bennett contends that without evidence of malice, punitive damages should not have been granted. Plaintiffs counter by arguing that since the trial court found that Bennett willfully and intentionally interfered with plaintiffs' contract, punitive damages were properly awarded.

In *Meyering, supra,* 708; 220 NW2d 128, the Court stated that punitive damages were not appropriate in an action for interference with contract rights:

"Under the rule set forth in Restatement, Torts, supra, punitive damages are not assessable. Liability is limited to the harm caused thereby."

However, we are of the opinion that *Meyering* is distinguishable from the case at bar on this point because in *Meyering* there was no finding that the defendant's conduct was willful, whereas in this case the trial court found that defendant Bennett's conduct was both intentional and willful. Therefore, *Meyering's* prohibition against awarding punitive damages in this type of action is inapplicable where the defendant's conduct has been found to be willful. Furthermore, our Supreme Court has recently held that if vindictive, willful, wanton or malicious conduct is present, punitive damages are

in order. *Alexander v Detroit,* 392 Mich 30, 43; 219 NW2d 41 (1974).

Our conclusion that the trial court's award of punitive damages was proper is further buttressed by the fact that, contrary to the statement in *Meyering,* we have been unable to find any rule against the awarding of punitive damages in the Restatement. On the contrary, Dean Prosser has described the damages allowable for this tort thusly:

"Where substantial loss has occurred, one line of cases tends to adopt the contract measure of damages, limiting recovery to those damages which were within the contemplation of the parties when the original contract was made. Another, apparently somewhat more uncertain of its ground, has applied a tort measure, but has limited the damages to those which are sufficiently 'proximate', with some analogy to the rules as to negligent torts. A third, *perhaps the most numerous, has treated the tort as an intentional one, and has allowed recovery for unforeseen expenses,* as well as for mental suffering, damage to reputation, *and punitive damages,* by analogy to the cases of intentional injury to person or property. In light of the intent and the lack of justification necessary to the tort, this seems the most consistent result." (Emphasis supplied.) Prosser, Torts (3d ed), § 123, p 973 (1964).

As previously mentioned, in awarding punitive damages to the plaintiffs, the trial court found that defendant Bennett "willfully and intentionally prevented Mr. Nienhuis from conveying to plaintiffs and procured his conveyance to Emmons". Under these circumstances, and in accordance with the majority rule as set out in Prosser, *supra,* we conclude that the trial court's allowance of punitive damages in the case at bar was proper.

5. *Are attorneys' fees a proper element of damages in a suit for tortious interference with a contract?*

In this case the trial court awarded plaintiffs $6,300 in actual damages against defendant Bennett for their attorneys' fees and legal expenses. At trial, undisputed testimony had been presented that plaintiffs had sustained $693.52 in out-of-pocket expenses and $5,565.60 in attorneys' fees. However, those amounts were not broken down between that incurred in the specific performance action against Emmons, et al, and that spent in the case against Bennett for damages for tortious interference with plaintiffs' contract.

In discussing the issue of what attorney fees are recoverable in this state, our Court, in *State Farm Mutual Automobile Insurance Co v Allen,* 50 Mich App 71, 78–79; 212 NW2d 821, 825–826 (1973), made the following observation:

"Finally, reasonable attorneys' fees incurred in prior litigation with a 'third party—not with the defendant' may be recoverable. See 22 Am Jur 2d, Damages, § 166, pp 235–236. Reference was made to this exception in *Brillhart v Danneffel,* 36 Mich App 359, 366; 194 NW2d 63, 66–67 (1971). *Cagney v Wattles,* 121 Mich App 469; 80 NW 245 (1899), cited in *Fleischer v Buccilli, supra* [13 Mich App 135; 163 NW2d 637 (1968)], appears to rest on this principle. As explained by McCormick, Damages, § 66, p 246:

" 'For the expense incurred in the *present* litigation, we have found that our law generally gives the successful party no recompense beyond the taxable costs which ordinarily include only a portion of his expenses. This is the case, however wrongful the suit or groundless the defense. On the other hand, where the present defendant has by his wrongful conduct, be it tort or breach of contract, caused the present plaintiff to defend or prosecute *previous* legal proceedings, the law reverses its

restrictive attitude and allows the plaintiff to recover all the expenses, including counsel fees, reasonably incurred by him in the prior litigation. (Emphasis by author.)'

"See also, Anno: *Right to Recover as Damages Attorneys' Fees Incurred in Earlier Litigation with a Third Person Because of Involvement Therein Through a Tortious Act of Present Adversary,* 45 ALR2d 1183, 1184–1185. Similarly, see Restatement, Torts, § 914, referred to as supporting authority in *Oppenhuizen v Wennersten, supra* [2 Mich App 288; 139 NW2d 765 (1966)]."

The above-quoted rule is directly applicable to the case at bar. We do not feel that the mere fact that these cases were consolidated for trial efficiency should operate to prevent plaintiffs from recovering the attorneys' fees incurred in the specific performance action against Emmons, et al. Under the rule stated above, if plaintiffs had separated the suits and obtained the specific performance judgment first, and then brought their tortious interference action against Bennett, the attorneys' fees incurred in the previous action would undoubtedly have been awarded as damages. Plaintiffs shall not be denied the benefit of this rule simply because these cases were consolidated due to the fact that the same facts controlled both cases.

The action commenced by plaintiffs against Emmons, et al, was prior litigation within the meaning of this exception, not only because that complaint was filed first, but also because the costs incurred by the plaintiffs in commencing and prosecuting that action were directly attributable to the wrongful conduct of defendant Bennett. Accordingly, any costs of litigation, including attorneys' fees, incurred by plaintiffs in commencing and prosecuting the specific performance action

against Emmons, et al, are recoverable as an element of damages in this proceeding. But for the wrongful conduct of Bennett, the plaintiffs would not have been put to any expense in prosecuting the specific performance action because the deed from Nienhuis to Suzanne Emmons would not have been signed.

The expenses, including attorneys' fees, incurred by plaintiffs in seeking damages for Bennett's "tortious interference" were incurred in the prosecution of the *present* not a *prior* action and are thus not recoverable.

Therefore, the provisions of the judgment awarding attorneys' fees and other litigation expenses are set aside. We remand for a determination by the trial court of the fees and expenses incurred by plaintiffs in prosecuting the action commenced against Emmons, et al. Upon such determination, the trial court shall apportion the fees and expenses respectively, and allow as damages only those attorneys' fees and expenses which represent the amounts incurred in the prosecution of the specific performance action.

Affirmed in part and reversed in part. Remanded for the entry of a judgment consistent with this opinion. No costs on this appeal, no party having fully prevailed. This Court does not retain jurisdiction.

All concurred.